**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Civil Case No.: 14-cv-80727-RLR

ELIZABETH BOHLKE, as an individual and on behalf of all others similarly situated,

*Plaintiff*,

*vs*.

SHEARER'S FOODS, LLC, formerly known as SHEARER'S FOODS, INC., an Ohio limited liability company,

*Defendant.*

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Elizabeth Bohlke, individually, and on behalf of all others similarly situated, by and through her undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this First Amended Class Action Complaint, and alleges against Defendant, Shearer's Foods, LLC, also formerly known as Shearer's Foods, Inc. (collectively "Shearer's Foods" or "Defendant"), as follows:

## I. INTRODUCTION

1. At all material times hereto, Defendant has unlawfully, negligently, unfairly, misleadingly, and deceptively represented that certain varieties of its Riceworks Gourmet Brown Rice Crisps, which are available in several different flavor varieties (collectively referred to herein as the "Products"), contain "No Artificial Ingredients" and that they are "All Natural," because, in fact, the Products contain unnatural, synthetic, and/or artificial ingredients.

2. The flavor varieties of the Products purchased by Plaintiff include the:

   i. Sweet Chili Flavor:

(a) Unnatural ingredients: Masa Corn Flour, Canola Oil, Maltodextrin (From Corn), Yeast Extract, and Citric Acid;

ii. Sea Salt Flavor:

(a) Unnatural ingredients: Masa Corn Flour, Canola Oil, and Caramel Color;

iii. Salsa Fresca Flavor:

(a) Unnatural ingredients: Masa Corn Flour, Canola Oil, Maltodextrin, Citric Acid, Yeast Extract, and Caramel Color.

3. Additionally, other flavors within the Product line that claimed to be "All Natural" and to have "No Artificial Ingredients" include the: (1) Parmesan & Sundried Tomato Flavor: Unnatural Ingredients: Ground White Corn Masa, Canola Oil, Maltodextrin, Yeast Extract, and Citric Acid; and (2)Tangy Barbeque Flavor: Unnatural Ingredients: Masa Corn Flour, Canola Oil, and Maltodextrin. The Products are depicted below for demonstrative purposes:




4. Despite the presence of these unnatural, synthetic, and/or artificial ingredients, Defendant knowingly, recklessly, or negligently markets and sells the Products as containing "No Artificial Ingredients" and as being "All Natural."

5. At all material times hereto, Defendant sells its Riceworks Gourmet Brown Rice Crisps at a premium price above other similar comparable products in the marketplace that do not

claim to be "All Natural." For example, on its website, Defendant states: "Why are riceworks® more expensive than potato chips? **A.** riceworks® are made with care using high quality, *natural ingredients to ensure you are eating an altogether healthier snack* than potato chips." RICEWORKS.COM, Our Crisps: FAQs, *available at* http://www.riceworks.com/faq_USA.html (last visited Jan. 3, 2014).

6. At all material times hereto, Defendant manufactures, markets, advertises, and sells the Products as containing "No Artificial Ingredients" and that the Products are "All Natural" on the front packaging of the Products.

7. At all material times hereto, all of the Products are substantially similar and uniformly make the same "No Artificial Ingredients" and "All Natural" claims in the same prominently displayed location on the front packaging of the Products. The representations that the Products contain "No Artificial Ingredients" and are "All Natural," communicated to Plaintiff and other members of the Class, are central to the marketing and sale of the Products.

8. Defendant's claims that the Products contain "No Artificial Ingredients" and are "All Natural" are false, misleading, and likely to deceive reasonable consumers because the Products contain unnatural, synthetic, and/or artificial ingredients.

9. As a result, Plaintiff brings this class action to secure, among other things, damages and equitable relief, declaratory relief, restitution, and in the alternative to damages, relief for unjust enrichment, for a Class of similarly situated purchasers, against Shearer's Foods, for: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.*; (2) Negligent Misrepresentation; (3) Breach of Express Warranty; (4) Violation of Magnusson-Moss Warranty

Act, 15 U.S.C. §§ 2301 *et seq.*; and (5) Unjust Enrichment (alleged in the alternative to Plaintiff's other causes of action).

10. Plaintiff is seeking damages individually and on behalf of the Class. In addition, Plaintiff is seeking an Order declaring Defendant's business practice to be in violation of FDUTPA, and requiring Defendant to cease from representing that the Products contain "No Artificial Ingredients," and that the Products are "All Natural," on the packaging for the Products that contain unnatural, synthetic, and/or artificial ingredients.

11. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

12. All allegations herein are based on information and belief and are likely to have evidentiary support after a reasonable opportunity for discovery.

## II. JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

14. Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that based on the sales of the Product the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of Florida, and Shearer's Foods can be considered a citizen of Ohio for diversity purposes.

15. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Products of this action in this judicial district.

## III. PARTIES

16. Plaintiff, ELIZABETH BOHLKE, is an individual more than 18 years old, and is a citizen of Florida, who resides in the city of Jupiter, Palm Beach County. Plaintiff respectfully requests a jury trial on all damage claims.

17. Defendant, Shearer's Foods, LLC, promoted and marketed the Products at issue in this jurisdiction and in this judicial district. Shearer's Foods, LLC is an Ohio Limited Liability Company with its principal place of business located in Massillon, Ohio 44646. Shearer's Foods, LLC, lists a Registered Agent with the Ohio Secretary of State as National Registered Agents, Inc., located at 1300 East Ninth Street, Cleveland, Ohio 44114. Shearer's Foods, LLC, has also done business during the Class Period as Shearer's Foods, Inc. Shearer's Foods can be considered a citizen of Ohio for diversity purposes. Based upon information and belief, all individual members of Shearer's Foods, LLC are citizens of States other than Florida. Based on publicly available information, the citizenship of each individual member of Shearer's Foods, LLC cannot be confirmed at this time. The citizenship of each individual member of Shearer's Foods, LLC will be determined throughout the course of discovery.

18. The Products' advertising relied upon by Plaintiff was prepared and/or approved by Shearer's Foods and its agents, and was disseminated by Shearer's Foods and its agents through advertising containing the misrepresentations alleged herein.

19. The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class into purchasing the Products.

20. Shearer's Foods is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements for the Products.

21. Plaintiff alleges that, at all times relevant herein, Shearer's Foods and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Shearer's Foods, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

22. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were Shearer's Foods' agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

23. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Shearer's Foods, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that Shearer's Foods participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

24. Whenever reference in this Complaint is made to any act by Shearer's Foods or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives

of Shearer's Foods committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Shearer's Foods while actively engaged in the scope of their duties.

## IV. FACTUAL ALLEGATIONS

25. Shearer's Foods manufactures, distributes, markets, advertises, and sells the Products that claim to be "All Natural" and contain "No Artificial Ingredients," when in fact, those claims are false, deceptive, and likely to mislead a reasonable consumer, because the Products contain the above alleged unnatural, synthetic, and/or artificial ingredients.

26. As a result, Defendant's "No Artificial Ingredients" claim and "All Natural" claim, which are uniformly, consistently and prominently displayed on the front of each individual packaging of the Products, are untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

27. Defendant unlawfully markets, advertises, sells and distributes the Products to Florida and United States purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores as being "All Natural." and containing "No Artificial Ingredients."

28. Unfortunately for Plaintiff and members of the Class, they were charged a price premium for the Products over and above other comparable products that do not claim to be "All Natural" or containing "No Artificial Ingredients."

### A. The Products' Ingredients are Objectively Not "All Natural" and are "Artificial"

29. Maltodextrin is an unnatural, synthetic, and/or an artificial ingredient, and its presence in the Products causes the Products to be misbranded and not "All Natural." Although Defendant claims the Products are "All Natural," which is a voluntary labeling decision, it fails to

disclose and conceals the fact that the Products contain genetically engineered synthetic ingredients.

30. **Maltodextrin** is a no-sweet saccharide polymer that is produced through partial acid and enzymatic hydrolysis of corn starch.[1] The acid hydrolysis process is specifically deemed to be a relatively "severe process" that renders an ingredient no longer "natural."[2] It is a white powder primarily found in processed foods where it is used as a thickener or filler. 21 C.F.R. § 184.1444(a). It is a synthetic factory-produced texturizer that is created by complex processing that does not occur in nature. It is used in processed foods as filler and to enhance texture and color. To produce Maltodextrin, acids, enzymes[3] or acids and enzymes are applied in sequence to a starch to induce partial hydrolysis (saccharification). The acids or enzymes convert or depolymerize starch to glucose or maltose molecules. Once maltose is high enough for Maltodextrin, the acids or enzymes are neutralized, removed or deactivated, and the resulting product is then refined, purified, and concentrated. Synthetic chemicals are often used to extract and purify the enzymes used to produce maltodextrin. The microorganisms, fungi, and bacteria used to produce these enzymes are also often synthetically produced.

31. Not only is Maltodextrin synthetic, it is also derived from Genetically Modified Organisms ("GMOs"). It is a genetically modified ("GM") and/or genetically engineered ("GE") corn-based synthetic ingredient. GMOs are plants that grow from seeds in which DNA splicing

---

1. Maltodextrins, GMO Compass, http://www.gmo-compass.org/eng/database/ingredients/148.maltodextrins.html (last visited August 12, 2014).

2. *See id.*

3. *See* Corn Refiners Association, Nutritive Sweeteners From Corn, 17-19 (2006), available at http://www.corn.org/wp-content/uploads/2009/12/NSFC2006.pdf (last accessed August 12, 2014).

has been used to place genes from another source into a plant. Because GMOs have been modified through biotechnology, the Products are not "All Natural." GMOs' genetic makeup has been altered through biotechnology to exhibit characteristics that do not otherwise occur in nature.[4] This fact is not disclosed in conjunction with the claim the Products are "All Natural."

32. Similarly, **Masa Corn Flour** and **Ground White Corn Masa** are also derived from genetically engineered corn, and are thus not "all natural."

33. According to the World Health Organization, of which the United States is Member State, "GMOs can be defined as organisms in which the genetic material (DNA) has been *altered in a way that does not occur naturally*. The technology is often called 'modern biotechnology' or 'gene technology,' sometimes also 'recombinant DNA technology' or 'genetic engineering.' It allows selected individual genes to be transferred from one organism into another, also between non-related species."[5]

34. In addition, the Supreme Court has held a naturally occurring DNA segment is a product of nature and not patent eligible, but that synthetically created DNA was not naturally occurring and, therefore, is not precluded from patent eligibility. *See Ass'n. for Molecular Pathology v. Myriad Genetics, Inc.*, No. 12-398, 2013 WL 2631062, --- *S. Ct.* --- (June 13, 2013). Because naturally occurring genes cannot be patented, it follows that genes that can be patented are not naturally.

---

4. Eng, Monica. "Debate rages over labeling biotech foods; Industry resists listing genetically modified ingredients; consumer worries continue." L.A. Times. June 2, 2011. BUSINESS; Business Desk; Part B; Pg. 4.

5. WORLD HEALTH ORGANIZATION, 20 Questions on Genetically Modified (GM) Foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/index.html (last visited August 12, 2014).

35. Similarly, Citric Acid and Canola Oil are unnatural, synthetic, and/or an artificial ingredients, and their presence in at least one of the Products causes those products to not be "All Natural."

36. **Citric Acid** is made synthetically by the fermentation of glucose. The process of making this citric acid utilizes GE sugar beets and GE maize. It increases the acidity of a microbe's environment, which makes it harder for bacteria and mold to survive and reproduce. Its main purpose is to serve as a preservative. It is recognized by the FDA and other federal agencies as an unnatural substance when used as a food additive. *See* FDA Informal Warning Letter to the Hirzel Canning Company (August 29, 2001) ("the addition of calcium chloride and citric acid to these products preclude use of the term 'natural' to describe this product."); U.S. International Trade Commission, *Synthetic Organic Chemical Index*, USCTIC Pub. 2933, at 3-105 (Nov. 1995). Citric acid is added to foods as a synthetic preservative, flavorant, and acidity regulator. *Food Ingredients and Colors*, *supra*. It is commonly manufactured through solvent extraction or mycological fermentation of bacteria. 21 C.F.R. § 184.1033(a).

37. **Canola oil** (also known as rapeseed oil) is also a highly processed GM and/or GE ingredient. It is made at a processing facility by slightly heating and then crushing the seed. Almost all commercial grade canola oil is then refined using hexane. Hexane is obtained by the refining of crude oil. Hexane is used to extract the canola oil from the canola seeds. The processing introduces toxins, and changes the original structure of the oil.

38. **Caramel Color** is derived from sugar that has been highly processed with ammonia and sulfites. Caramel color is also subject to chemical modification. Caramel colors, like the offending ingredients in the Products, are not natural because they do not occur in nature and are not directly derived from substances occurring in nature.

39. **Yeast Extract** is a highly processed yeast-based additive that is used as a flavor enhancer to create artificially savory flavors or umami taste sensations in food products. *See* FDA, *Food Ingredients and Colors* (April 10, 2010), http://www.fda.gov/food/foodingredientspackaging/ucm094211. This additive contains high amounts of free glutamate or monosodium glutamate ("MSG"), a neurological excitotoxin linked to migraines, depression, fatigue, and cognitive degenerative disease. *See* FDA, *FAQ on Monosodium Glutamate (MSG)*, http://www.fda.gov/Food/FoodIngredientsPackaging/ucm328728. It is synthetically created through the chemical or thermal destruction of yeast cell walls and the subsequent formation of free amino acids through autolysis. The soluble components are extracted and the remaining substance is concentrated, pasteurized, and stored as a liquid or paste until mechanically added to food

40. Synthetic chemicals are often used to extract and purify the enzymes used to produce maltodextrin and dextrose. The microorganisms, fungi, and bacteria used to produce these enzymes are also often synthetically produced.

41. Despite all these unnatural ingredients, Defendant knowingly markets the Products as "All Natural."

42. The "FDA has not developed a definition for use of the term natural or its derivatives," but it has *loosely* defined the term "natural" as a product that "does not contain added color, artificial flavors, or synthetic substances."[6] According to federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources,

---

6. *What is the Meaning of 'Natural' on the Label of Food?*, FDA, Transparency, FDA Basics, available at *http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868* (last visited August 1, 2014).

> except that such term shall not apply to substances created by naturally occurring biological processes.

7 C.F.R. §205.2.

43. The FDA has not occupied the field of "natural labeling," and in any event, this case is not about labeling, it is about Defendant's voluntary and affirmative "All Natural" statement on the front packaging for the Products being false, misleading, and likely to deceive reasonable consumers. Courts routinely decide whether "natural" statements are likely to deceive reasonable consumers.

44. Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed," defined as:

> (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.
>
> Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing.[7]

45. Food manufacturers must comply with federal and state laws and regulations governing labeling food products. Among these are the Federal Food, Drug and Cosmetic Act (FDCA) and its labeling regulations, including those set forth in 21 C.F.R. part 101.

---

7. *Food Standards and Labeling Policy Book,* USDA, 2005, available at *http://www.fsis.usda.gov/oppde/larc/policies/labeling_policy_book_082005.pdf* (last visited August 1, 2014).

46. An ingredient that is not "artificial" because it is derived from a naturally occurring plant or animal source can nonetheless be "synthetic" if it is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.

47. Florida and federal law have placed similar requirements on food companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

48. Plaintiff is explicitly alleging only violations of state law that is identical and/or mirrors the labeling, packaging, and advertising requirements mandated by federal regulations and laws, including but not limited to, the Federal Food, Drug, and Cosmetic Act (FD&C Act), the Federal Food and Drug Association (F.D.A.), the Federal Trade Commission (F.T.C.), and the Nutrition Labeling and Education Act (N.L.E.A.).

49. In addition to its blanket adoption of federal labeling requirements, Florida has also enacted various laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, Defendant's Product label is misleading and deceptive pursuant to Florida's Food Safety Act, FLA. STAT. §§ 500.01, *et seq.*—identical in all material aspects hereto—to the Food and Drug Administration's ("FDA") Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 343, 343-1. Plaintiffs claim does not seek to contest or enforce anything in Florida's Food Safety Act that is beyond the FFDCA or FDA regulation requirements.

50. For example, the Florida Food Safety Act, Fla. Stat. § 500.01, states:

> Purpose of chapter.—This chapter is intended to:
>
> (1) Safeguard the public health and promote the public welfare by protecting the consuming public from injury by product use and the purchasing public from injury by merchandising deceit, flowing from intrastate commerce in food;

> (2) Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the Federal Food, Drug, and Cosmetic Act; the Agriculture Marketing Act of 1946; and likewise uniform with the Federal Trade Commission Act, to the extent that it expressly prohibits the false advertisement of food; and
>
> (3) Promote thereby uniformity of such state and federal laws and their administration and enforcement throughout the United States and in the several states.
>
> Fla. Stat. § 500.02(1)–(3).

51. In Florida, "A food is deemed to be misbranded: If its labeling is false or misleading in any particular." Fla. Stat. § 500.11(1)(a).

52. Like Plaintiffs state law claims, under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it fails to contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

53. Furthermore, "Plaintiff's state consumer protection law claims are not preempted by federal regulations." *Mark Krzykwa v. Campbell Soup Co.*, Case No. 12-62058-CIV-DIMITROULEAS, *6 (S.D. Fla., May 28, 2013) (DE 37)**.** (citing *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, *6 (N.D. Cal. Dec. 17, 2012). Additionally, the primary jurisdiction doctrine does not apply "because the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural.'" *Id*. at p. 8.

**B. Defendant's False and Misleading Advertising is Likely to Deceive Reasonable Consumers**

54. Despite all these unnatural, highly processed, and artificial ingredients, Defendant knowingly markets the Products as "All Natural." Despite all these unnatural, highly processed, and artificial ingredients, Defendant knowingly markets the Products as "All Natural Defendant's

false and misleading representations and omissions are likely to deceive Plaintiff and other reasonable consumers.

55. A reasonable consumer would expect and understand that the term "all natural" on a product label and other advertisements would mean the product comports with the ordinary meaning of the term as defined in the dictionary and federal regulations relating to food.

56. The term "natural" is defined by the Mirrriam-Webster dictionary as "existing or produced by nature: not artificial."

57. Because it is not feasible for a reasonable consumer to test the contents and qualities of a food product prior to sale, reasonable consumers must and do rely on food label representations and information in making purchase decisions. Products that are entirely enclosed in packaging, such as the Products at issue, require the consumer to rely entirely on representations about the Product.

59. The "All Natural" claim leads a reasonable consumer to believe that all of the ingredients in the Products are natural, when in fact, they are not.

60. Defendant's statements that the Products contain "No Artificial Ingredients," and that the Products are "All Natural," are material to a reasonable consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Class, care whether products contain unnatural, synthetic, or artificial ingredients, especially when a product claims to be "All Natural" and contain "No Artificial Ingredients." Reasonable consumers attach importance to a "No Artificial Ingredients" claim, or "All Natural" claim, when making a purchasing decision.

61. Defendant chose to market the Products falsely and deceptively because it knew that consumers would pay more for an all-natural product, which reasonably leads the reasonable

consumer to believe is a healthier product, than they would pay for a similar product that unnatural, has artificial ingredients, fake flavors, GMO's, and is not healthful.

62. A representation that a product contains "No Artificial Ingredients," or that a product is "All Natural," is material to a reasonable consumer.

63. According to Consumers Union, "Eighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients." *See* Notice of the Federal Trade Commission, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf (last visited Jan. 3, 2014).

64. Defendant markets and advertises the Products as "All Natural," and containing "No Artificial Ingredients," to increase sales derived from the Products. Defendant is well-aware that claims of food being natural or being free of artificial ingredients are material to reasonable consumers.

65. Plaintiff and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

66. Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions.

67. Upon information and belief, Defendant made the deceptive representations and omissions regarding the Products with the intent to induce Plaintiff's and the other Class members' purchase of the Products.

68. Defendant's representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

69. Thus, Plaintiff and the other Class members' reliance upon Defendant's misleading and deceptive representations and omissions may be presumed. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

70. Upon information and belief, in making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a price premium for the Products over comparable products that are not labeled "No Artificial Ingredients" or "All Natural," furthering Defendant's private interest of increasing sales for the Products, and decreasing the sales of products by Defendant's competitors that do not claim to be "All Natural" or to contain "No Artificial Ingredients."

71. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that Plaintiff and other Class members:

a. paid a sum of money for Products that were not as represented;

b. paid a premium price for Products that were not as represented;

c. were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

d. were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

e. did not receive Products that measured up to their expectations as created by Defendant;

f. ingested a substance that was other than what was represented by Defendant;

g. ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;

h. ingested a product that was artificial, synthetic, or otherwise unnatural;

i. ingested a substance that was of a lower quality than what Defendant promised;

j. were denied the benefit of knowing what they ingested;

k. were denied the benefit of truthful food labels;

l. were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

m. were denied the benefit of the beneficial properties of the natural foods promised.

72. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Products.

73. Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

74. Plaintiff and the other Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.

75. Plaintiff and the other Class members purchased, purchased more of, or paid more for the Products than they would have done had they known the truth about the Products.

**C. Plaintiff's Purchase and Reliance**

76. Plaintiff, Elizabeth Bohlke, has purchased the above alleged Products during the Class Period from approximately January 2013 through October 2013. She purchased the Products from a Publix Supermarket (on U.S. 1) located in Jupiter, Palm Beach County, Florida, and a Walmart (on Indiantown Road) located in Jupiter, Palm Beach County, Florida. Plaintiff purchased the Products approximately 10-15 times during this period. Plaintiff paid approximately $3.99 for each purchase of the Products.

77. The Products purchased by Plaintiff claimed to contain "No Artificial Ingredients," and to be "All Natural," on the front packaging, which Plaintiff perceived, read and relied on in

making Plaintiff's purchase. However, the Products contained the above alleged unnatural, synthetic, and/or artificial ingredients.

78. Plaintiff interpreted the "No Artificial Ingredients" and "All Natural" claims to mean that the Products did not contain unnatural, synthetic, or artificial ingredients. Plaintiff further interpreted the Statements to mean that Products were healthier than similar comparable products that do not claim to be "All Natural."

79. Subsequent to purchasing the Products, Plaintiff discovered that they contain unnatural, synthetic, and artificial ingredients, and thus, are not "All Natural."

80. Although Defendant markets the Products as "All Natural," it fails to also disclose material information about the Products; the fact that they contains unnatural, synthetic, and/or artificial ingredients. This non-disclosure, while at the same type branding the Products as "All Natural" and with "No Artificial Ingredients" is deceptive and likely to mislead a reasonable consumer. Defendant Deceptively Markets the Products as "All Natural" to induce consumers to Purchase the Products.

81. Defendant markets and advertises the Products as "All Natural" to increase sales of the Products and Defendant is well-aware that claims of food being "All Natural" are material to consumers. Despite knowing that all of the ingredients in the Products are not natural, Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as being "All Natural."

82. Plaintiff and members of the Class paid a price premium for the Products because the Products claimed to contain "No Artificial Ingredients" and be "All Natural."

83. Plaintiff and members of the Class would not have purchased the Products had they known that they contained artificial ingredients and ingredients that are not "All Natural."

84. Likewise, if Plaintiff and members of the Class had known the Products contained unnatural, synthetic, or artificial ingredients, they would not have purchased them.

85. Defendant's "All Natural" advertising for the Products was and is false, misleading, and/or likely to deceive reasonable consumers. Therefore, the Products are misbranded and valueless, worth less than what Plaintiff and members of the Class paid for them, and/or are not what Plaintiff and members of the Class reasonably intended to receive.

86. Because the Products are unlawfully misbranded and sold pursuant to an unfair business practice, and there is no market value for an unlawful product, Plaintiff and the Class seek damages equal to the aggregate purchase price paid for the Products during the Class Period and injunctive relief described below.

87. Moreover, and in alternative, Plaintiff and members of the Class paid a price premium for the "All Natural" Products, over other similar products that do not claim to be "All Natural." As a result, Plaintiff and the Class are entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Products without the false "All Natural" representation. The "price premium" is equal to the amount charged for, and pad by, Plaintiff and members of the class. The true market value is no more than the retail price charged for other comparable brands of chip products that do not claim to be "All Natural."

88. The precise damage calculation will be determined throughout discovery and is within the purview of expert testimony. Notwithstanding, Plaintiff alleges that there is statistically measurable greater retail price for the Products, on average, than comparable brands of products, of no less than 150%.

## V. CLASS ACTION ALLEGATIONS

89. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

90. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as Statewide Classes and additionally and/or alternatively, Nationwide Classes as follows:

a. **Statewide Classes.** Plaintiff brings this action on behalf of himself and on behalf of statewide classes, as follows:

   i. **Florida Classes.** Pursuant to Rule 23(a) and (b)(2), all Florida residents who purchased the Products identified in Plaintiff's Complaint, during the period from May 2010, for personal use and not resale, through and to the date Notice is provided to the Class;

   ii. Pursuant to Rule 23(a) and (b)(3), all Florida residents who purchased the Products identified in Plaintiff's Complaint, during the period from May 2010, for personal use and not resale, through and to the date Notice is provided to the Class.

b. **Nationwide Classes**. Plaintiff brings this action on behalf of himself and on behalf of statewide classes, as follows:

   i. **Nationwide Classes.** Pursuant to Rule 23(a) and (b)(2), all United States residents who purchased the Products identified in Plaintiff's Complaint, during the period from May 2010, for personal use and not resale, through and to the date Notice is provided to the Class;

ii. Pursuant to Rule 23(a) and (b)(3), all United States residents who purchased the Products identified in Plaintiff's Complaint, during the period from May 2010, for personal use and not resale, through and to the date Notice is provided to the Class.

91. Plaintiff respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff

92. Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass, so that the questions of law and fact are common to all members of the Class and any subclass. All members of the Class and any subclass were and are similarly affected by the deceptive advertising for the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

93. Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

94. Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, *inter alia*:

a. Whether Defendant's business practices violated FDUTPA, FLA. STAT. §§ 501.201, *et seq.*;

b. Whether the Products contain artificial ingredients;

c. Whether the Products are all natural;

d. Whether the ingredients contained in the Products are artificial ingredients;

e. Whether the ingredients contained in the Products are all natural;

f. Whether the claim "No Artificial Ingredients" on the Products' packaging is material to a reasonable consumer;

g. Whether the claim "All Natural" on the Products' packaging is material to a reasonable consumer;

h. Whether the claim "No Artificial Ingredients" on the Products' packaging and advertising is false to a reasonable consumer.

i. Whether the claim "No Artificial Ingredients" on the Products' packaging and advertising is false to a reasonable consumer.

j. Whether the claim "No Artificial Ingredients" on the Products' packaging and advertising is likely to deceive a reasonable consumer;

k. Whether the claim "All Natural" on the Products' packaging and advertising is likely to deceive a reasonable consumer;

l. Whether the claim "No Artificial Ingredients" on the Products' packaging and advertising is misleading to a reasonable consumer;

m. Whether the claim "All Natural" on the Products' packaging and advertising is misleading to a reasonable consumer;

n. Whether a reasonable consumer is likely to be deceived by a claim that a product contains "No Artificial Ingredients" when the product contains unnatural, synthetic, and/or artificial ingredients;

o. Whether a reasonable consumer is likely to be deceived by a claim that a product is "All Natural" when the product contains unnatural, synthetic, and/or artificial ingredients;

p. Whether Defendant was unjustly enriched by the sale of the Products; and

q. Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

95. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

96. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

97. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

98. Certification of this class action is appropriate under *Federal Rule of Civil Procedure* 23 because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

99. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

100. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes.

101. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

102. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

103. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION: FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ*.

104. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred three (103) of this Amended Complaint as if fully set forth herein verbatim.

105. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

106. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

107. Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

108. The sale of the Products at issue in this cause was a "consumer transaction" within the scope of FDUTPA.

109. Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*.

110. Defendant's Products are goods within the meaning of FDUTPA and Defendant is engaged in trade or commerce within the meaning of FDUTPA.

111. Defendant's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiff and members of the Class, and therefore, violate Section 500.04, *Florida Statutes*.

112. Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

113. Specifically, Defendant has represented that the Products are "All Natural" and contain "No Artificial Ingredients," when in fact, the Products contain unnatural, synthetic, and/or artificial ingredients, as alleged herein.

114. Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased and consumed Defendant's mislabeled Products.

115. Reasonable consumers must and do rely on Defendant to honestly represent the true nature of its ingredients.

116. Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing the Products were something they were not; specifically that they are "All Natural" and contain "No Artificial Ingredients."

117. The knowledge required to discern the true nature of the Products is beyond that of the reasonable consumer—namely that the Products do or do not contain unnatural, synthetic, and/or artificial ingredients.

118. Plaintiff and the Class suffered damages and are entitled to injunctive relief. Thus, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make claims for damages, attorney's fees and costs.

119. The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant.

120. Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

## VII. SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

121. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred three (103) of this Amended Complaint as if fully set forth herein verbatim.

122. Defendant has negligently represented that the Products contain "No Artificial Ingredients" and are "All Natural."

123. Defendant has represented that the Products are "All Natural" and contain "No Artificial Ingredients," when in fact, the Products contain unnatural, synthetic, and/or artificial ingredients, as alleged herein.

124. Defendant has misrepresented a material fact to the public, including Plaintiff and Class Members, about the Products.

125. The Products are marketed directly to consumers by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

126. Defendant knows the Products' misstatements are material to the reasonable consumer and Defendant intends for consumers to rely upon the misstatements when choosing to purchase the Products.

127. Defendant has omitted the fact that the Products contain unnatural, synthetic, and/or artificial ingredients in the Products, despite claiming that the Products contain "No Artificial Ingredients" and that the Products are "All Natural."

128. Defendant knew or should have known that these misstatements or omissions would materially affect Plaintiff's and Class members' decisions to purchase the Products.

129. Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products.

130. The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies.

131. Plaintiff and Class members would not have been willing to pay for Defendant's Products if they knew that the Products contained unnatural, synthetic, and/or artificial ingredients.

132. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Class were induced to purchase Defendant's Products, and have suffered damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

133. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

## VIII. THIRD CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

134. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred three (103) of this Amended Complaint as if fully set forth herein verbatim.

135. Defendant has expressly represented that the Products are "All Natural" and contain "No Artificial Ingredients," when in fact, the Products contain unnatural, synthetic, and/or artificial ingredients, including, as alleged herein.

136. The Products are marketed directly to consumers by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

137. Plaintiff is informed and believes, and thereon alleges, that Defendant made an express warranty, including, but not limited to, that the Products contain "No Artificial Ingredients" and are "All Natural."

138. Defendant breached its express warranty by claiming that the Products contain "No Artificial Ingredients" and are "All Natural," because the Products contain unnatural, synthetic, and/or artificial ingredients.

139. As a proximate result of the failure of the Products to perform as expressly warranted by Defendant, Plaintiff and members of the Class have suffered actual damages in an amount to be determined at trial, in that they were induced to purchase products they would not have purchased had they known the true facts about, and have spent money on Products that were not what they were represented to be and that lack the value Defendant represented the Products to have.

140. Plaintiff gave timely notice to Defendant of its breach of express warranty on behalf of herself and all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on January 3, 2014.

141. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's breach of express warranty.

## IX. FOURTH CAUSE OF ACTION:
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. §§ 2301 *et seq.*)

142. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred three (103) of this Amended Complaint as if fully set forth herein verbatim.

143. Defendant has breached express warranties regarding the Products, as described in the third cause of action above.

144. Defendant has expressly represented that the Products are "All Natural" and contain "No Artificial Ingredients," when in fact, the Products contain unnatural, synthetic, and/or artificial ingredients, including, but not limited to, Masa Corn Flour, Canola Oil, and Maltodextrin (From Corn).

145. Plaintiff and the Class are consumers as defined in 15 U.S.C. § 2301(3).

146. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

147. The Products are consumer products as defined in 15 U.S.C. § 2301(6).

148. By reason of Defendant's breach of express warranty, Defendant has violated the statutory rights due to Plaintiff and members of the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301 *et seq.*, thereby causing damages to Plaintiff and the Class.

149. Plaintiff gave timely notice to Defendant of its breach of express warranty on behalf of herself and all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on January 3, 2014.

150. Therefore, Plaintiff and the Class seek all available remedies, damages, and awards under the Magnuson-Moss Warranty Act.

## X. FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT

151. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred three (103) of this Amended Complaint as if fully set forth herein verbatim

152. In its marketing and advertising, Defendant has made false and misleading statements and/or omissions regarding the Products, as described herein.

153. Defendant has represented that the Products are "All Natural" and contain "No Artificial Ingredients," when in fact, the Products contain unnatural, synthetic, and/or artificial ingredients, as alleged herein.

154. The Products are marketed directly to consumer by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

155. Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Products.

156. Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Products to Plaintiff and other Class members.

157. Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

158. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is aware that the claims and/or omissions that it makes about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

159. Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

160. Accordingly, the Products are valueless such that Plaintiff and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiff and Class members during the Class Period.

161. Plaintiff and Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the Products had been adequately advertised, and Plaintiff and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Products.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2. An Order finding in favor of Plaintiff and members of the Class on all counts asserted in this class action;

3. For an award of declaratory and equitable relief as follows:

   (a) Declaring Defendant's conduct to be in violation of FDUTPA and enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing and advertising of the Products for the purpose of selling the Products in such manner as set forth in detail above or making any claims found to violate FDUTPA or the other causes of action as set forth above;

   (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

(c) Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

(d) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

4. For actual damages in an amount to be determined at trial for all causes of action;

5. For an award of attorney's fees and costs;

6. For an award of any other relief the Court might deem just, appropriate, or proper; and

7. For pre- and post-judgment interest on any amounts awarded**.**

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

**Respectfully Submitted By,**

Dated: August 12, 2014

*/s/ Joshua H. Eggnatz*

Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**THE EGGNATZ LAW FIRM, P.A.**
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
JEggnatz@EggnatzLaw.com

*Attorneys for Plaintiff*
*and the Proposed Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **12th day of August, 2014**, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF. I also certify under penalty of perjury under the laws of the United States of America that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by

CM/ECF.

/s/ Joshua H. Eggnatz

Joshua H. Eggnatz, Esq.

**SERVICE LIST**

Justin B. Mazzara (0036217)
jmazzara@hahnlaw.com
**HAHN LOESER &PARKS LLP**
2400 First Street, Suite 300 Fort Myers, FL 33901
Phone: 239.337.6700 Fax: 239.337.6701

Scott J. Kelly (Ohio Bar No. 0069835)
skelly@hahnlaw.com
Kelly A. Kosek (Ohio Bar No. 0075623)
kkosek@hahnlaw.com
**HAHN LOESER &PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: 216.621.0150
Fax: 216.241.2824

***Attorneys for Defendant***