**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

Civil Case No.: 14-cv-80727-RLR

ELIZABETH BOHLKE, as an individual and
on behalf of all others similarly situated,

     *Plaintiff,*

*vs.*

SHEARER'S FOODS, LLC, formerly known
as SHEARER'S FOODS, INC., an Ohio
limited liability company,

     *Defendant.*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
STRIKE CLASS-ACTION ALLEGATIONS AND TO DISMISS THE FIRST AMENDED
COMPLAINT**

i

**TABLE OF CONTENTS**

Page No.

TABLE OF AUTHORITIES.............................................................................................iii

I.  INTRODUCTION...................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................................1

III.  LEGAL STANDARD...............................................................................................3

IV.  LEGAL ARGUMENT.............................................................................................4

    A.  PLAINTIFF HAS SUFFICIENTLY PLEADED FOR A NATIONWIDE CLASS
    ACTION.................................................................................................................4

        1.  Rule 23(b) ......................................................................................7

    B.  PLAINTIFF'S FIRST AMENDED COMPLAINT IS PROPERLY PLED .............................9

        1.  Florida's Food Safety Act Does Not Govern This Case.............................9

            a.  Defendant Misapprehends the Nature of Plaintiff's
            Claims...............................................................................................9

            b.  The FSA Does Not Preempt Plaintiff's FDUTPA Count..............10

    C.  Plaintiff's Claims Constitute Warranties under Florida Common Law and the
    MMWA.................................................................................................................12

        1.  Plaintiff Has Alleged Damages.................................................................15

    D.  Reasonable Consumers, Like Plaintiff and Members of the Class Were Deceived
    by Defendant's Deceptive Product Label.......................................................18

    E.  Plaintiff Has Properly Alleged Justifiable Reliance.............................................19

    F.  Plaintiff Has Stated a Claim for Unjust Enrichment............................................20

    G.  The Primary Jurisdiction Doctrine Does Not Apply to This Case........................21

    H.  Any Dismissal of Any of Plaintiff's Claims Should Be without
    Prejudice..............................................................................................................23

V.  CONCLUSION.....................................................................................................23

VI.  CERTIFICATE OF SERVICE...............................................................................25

# TABLE OF AUTHORITIES

## Cases

*2P Commercial Agency S.R.O. v. Familant*, Case No. 2:11-cv-652-FtM-29SPC, 2012 U.S. Dist. LEXIS 179628, *10-11 (M.D. Fla. Dec. 19, 2012) ...............................................................5

*Alabama v. Blue Bird Body, Co.*, 573 F.2d 309, 319 (5th Cir. 1978) ...........................................8

*Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000 (N.D. Cal. Aug. 25, 2012)............................2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................................3

*Astiana v. Ben & Jerry's Homemade, Inc.,* C 10-4387 PJH, 2011 WL 2111796 at *3-4 (N.D. Cal. May 26, 2011).............................................................................................................................19

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ..............................................23

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ............................................................7

*Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*, No. 10-23869-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 61710, *18-19 (S.D. Fla. May 2, 2012) ...............................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................3

*Berges v. Infinity Ins. Co.*, 896 So. 2d 665 (Fla. 2004)...............................................................19

*Boca Burger, Inc. v. Forum*, 912 So. 2d 561 (Fla. 2005)............................................................11

*Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) .....................................................8

*Boyes v. Shell Oil Prods. Co.*,199 F.3d 1260 (11th Cir. 2000)............................................. 21, 22

*Bridge v. Phx. Bond & Indem. Co.*, 533 U.S. 639 (2008) ............................................................6

*Carol D. Smith v. WM. Wrigley Jr. Company*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009)...............16

*Carter v. Hector Supply Co.*, 128 So. 2d 390 (Fla. 1961).......................................................8, 14

*Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of America, Inc*., 444 So. 2d 1068 (Fla. 3d DCA 1984).............................................................................................................14

*Chin v. General Mills, Inc.*, No. 12-2150, 2013 U.S. Dist. LEXIS 77345 (D. Minn. May 31, 2013) .............................................................................................................................................12

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987) .................................................6

*Cohen v. Kravit Real Estate Buyers, Inc.*, 843 So. 2d 989 (Fla. 4th DCA 2003) ...................6, 21

*Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988 (Fla. 5th DCA 2004)...................................16

*Conley v. Gibson*, 355 U.S. 41 (1957)........................................................................................4

*Corn Const., Inc. v. Broward County Bldg. and Const. Trades Council*, 268 So.2d 438 (Fla. App. 1972) ...........................................................................................................18

*County of Suffolk v. Long Island Lighting Co*., 907 F.2d 1295 (2nd Cir.1990).........................22

*Davis v. Powertel, Inc.*, 777 So. 2d 971 (Fla. 1st DCA 2000) ...................................................18

*Del Monte Fresh Produce Co.* v. *Dole Food Co., Inc.,* 136 F.Supp.2d 1271 (S.D. Fla. 2001) ......4

*Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1 (D. Mass. 2010) ...........................................7

*Dye v. Bodacious Food Company*, No.: 9:14-cv-80627-WPD (S.D. Fla. Sept. 9, 2014) ..............
.....................................................................................................................13, 14, 19, 22

*Ebin v. Kangadis Food, Inc*, 297 F.R.D. 561 (S.D.N.Y. Feb. 24, 2014)........................................5

*Egbebike v. Wal-Mart Stores East, LP*, 2014 WL 3053184, at *5 (M.D. Fla. ...........................12

*Enzo Forcellati, et al. v. Hyland's, Inc., et al.*, Case No.: CV 12-1983-GHK (MRWx), at * 1-3 (C.D. Cal. April 9, 2014) .........................................................................................5

*Farinas v. Florida Farm Bureau General Ins. Co.*, 850 So. 2d 555 (Fla. 4th DCA 2003) ..........19

*Feiner v. Innovation Ventures, LLC*, Case No.: 12-cv-62495 (S.D. Fla. May 29, 2013).............15

*Florida Coca-Cola Bottling Co. v. Jordan*, 62 So. 2d 910 (Fla. 1953).......................................13

*Foman v. Davis*, 371 U.S. 178 (U.S. 1962) ...............................................................................23

*Foster v. Chattem, Inc.* No.: 6:14-cv-00346-RBD-GJK, * 3-4 .................................................16

*Garcia v. Kashi Co.*, 12-21678, --- F. Supp.2d --- 2014 WL392163, *9 (Sept. 5, 2014). 11, 16, 20

*Global Tel*Link Corp. v. Scott*, 652 F.Supp.2d 1240 (Fla. Dist. Ct. 2009) ................................18

*Henderson v. Gruma Corp.,* CV 10-04173 AHM AJWX, 2011 WL 1362188 at *11 (C.D. Cal. Apr. 11, 2011) .....................................................................................................19

*Holk v. Snapple Beverage Corp.,* 575 F.3d 329 (3d Cir. 2009)..................................................19

*Hoskins v. Jackson Grain Co.,* 63 So. 2d 514 (Fla. 1953) .........................................................14

*In re Conagra Foods Inc.,* 908 F.Supp.2d 1090 (C.D. Cal. 2012) .............................................19

*In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)..............................................................................12

*In re Prempro*, 230, F.R.D. 555 (D. Ark. 2005)..........................................................................7

iv

*In re: Frito-Lay North America, Inc. All Natural Litigation*, 2013 U.S. Dist. LEXIS 123824, *34. (E.D. NY Aug. 29, 2013)...........................................................................................................2

*International Harvester*, 104 F.T.C 949 (1984) ............................................................................17

*Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135 (Fla. 3d DCA 1989)...............................18

*Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968)..........................................................9

*Jones v. ConAgra Foods, Inc.*, 2012 US Dist. LEXIS 178352, *6 (N.D. Cal., Dec. 17, 2012)....22

*Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) ...............................12

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)..................................................6, 8

*Koehler v. Merrill Lynch & Co., Inc.*, 706 So. 2d 1370 (Fla. 2d DCA 1998) ...........................20

*Krzykwa v. Campbell Soup Co.*, 946 F. Supp.2d 1370 (S.D. Fla. 2013)...................10, 11, 20, 22

*Larson v. Trader Joe's Co.*, 917 F. Supp.2d 1019 ...................................................................11

*Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028 (N.D. Cal. 2009) .......................19, 22

*Lopes v. Allstate Indem. Co.*, 873 So. 2d 344 (Fla. 3d DCA 2004)............................................20

*Manheim v. Ford Motor Co.*, 201 So. 2d 440 (Fla. 1967) ........................................................13

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)...........................................5

*McReynolds v. Alabama Dept. of Youth Services*, 204 Fed. Appx. 819 (11th Cir. 2006) .............4

*Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla.,* 761 So.2d 1256 (Fla. 3d DCA 2000) ...............................................................5, 18

*Monticello v. Winnebago Indus. Inc.*, 369 F.Supp.2d 1350 (N.D. Ga. 2005)........................12, 15

*Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO-, 2013 WL 5514563, *4 (N.D. Cal. Oct. 4, 2013).......................................................................................................................22

*New Nautical Coatings, Inc. v. Scoggin*, 731 So. 2d 145 (Fla. 4th DCA 1999) .........................14

*Pharmaceutical Research and Mfrs. of America v. Walsh*, 538 U.S. 644 (2003)........................21

*Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2010 U.S. Dist. LEXIS 117477 (S.D. Fla. Nov. 3, 2010) .........................................................................................................................14

*Prohias v. Pfizer*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007).......................................................20

*Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100 (E.D. Va. 1980)................................................9

*Reilly v. Amy's Kitchen*, No. 13-21525 2013 WL 9638985 (S.D. Fla. Dec. 9, 2013)...... 11, 20, 22

*Reiter v.Cooper*, 507 U.S. 258, 113 S.Ct. 1213 L.Ed.2d 604 (1993)..........................................22

*Renaissance Cruises, Inc.* v. *Glassman, et. al.*, 738 So. 2d 436 (Fla. 4th DCA 1999) .................5

*Roberts v. Florida Power & Light Co.,* 146 F.3d 1305 (11th Cir. 1998).....................................4

*Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006)....................................................16

*Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. 3d DCA 1984) ....................................................16

*Romano v. Motorola, Inc.*, 2007 US Dist. LEXIS 86472, *2 (S.D. Fla. 2007) ...........................4

*Roos v. Morrison*, 913 So. 2d 59 (Fla. 1st DCA 2005)..............................................................19

*Rosen v. J.M. Auto Inc., et al.*, Case No.: 07-61234-CIV-DIMITROULEAS, 270 F.R.D 675 (S.D. Fla. 2009)..........................................................................................................................17

*Sierra Club v. Van Antwerp*, 362 F. A'ppx 100 (11th Cir. 2010)...............................................22

*Siever v. BWGaskets, Inc.*, 669 F.Supp. 2d 1286 (M.D. Fla. Oct. 25, 2009)...............................16

*Smith v. 2001 South Dixie Highway, Inc*., 2004 Fla. App. LEXIS 2709 (Fla. 4th DCA March 3, 2004) ......................................................................................................................................17

*Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp.2d 1336 (S.D. Fla. 2009)............................ 13, 14, 17

*Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306 (Fla. 1st DCA 2011).............20

*Spencer v. Carl's Markets, Inc*., 45 So. 2d 671 (Fla. 1950).......................................................13

*Spinelli v. Capital One Bank*, 265 F.R.D. 598 (M.D. Fla. 2010)...............................................17

*Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010)............................................................7

*Syntek Semiconductor Co. v. Microchip Technology Inc*., 307 F.3d 775 (9th Cir. 2002) ............21

*Thomas v. Costco Wholesale Corp.*, No. 5:12-cv-02908 EJD, 2013 U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013)......................................................................................................................12

*Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168 (Fla. 4th DCA 1994).................20

*United States v. Western Pac. R.R. Co*., 352 U.S. 59, 64, 77 S.Ct. 161 1 L.Ed.2d 126 (1956) ....22

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 ..........................................................................8

*Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066 (E.D. Cal. 2010).......................19

*Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir.1986)........................................................12

*Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998) ..............................................................7

*Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co., Inc.*, 20 Fla. L. Weekly Fed.

D 705 (S.D. Fla. 2007) ..........................................................................................20

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724, 2013 WL 5487236, *14 (N.D. Cal. Oct. 2, 2013) ....................................................................................................2

*Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008)..........................................15, 19

Wilson v. State, 765 So. 2d 950 (Fla. 5th DCA 2000) ...........................................19

*Wright v. General Mills, Inc*., 2009 U.S. Dist. LEXIS 90576, *9 (S.D. Cal., Sept. 30, 2009) .....22

**Statutes**

15 U.S.C. § 2310 (d)(1) ..........................................................................................12

FDUTPA, Fla. Stat. §§ 501.201-501.213 ..................................................5, 6, 9-11, 13, 16-19

Fed. R. Civ. P. 8(a)(2) ............................................................................................4

Fed. R. Civ. P. 23(b)(2) ..........................................................................................6

Fed. R. Civ. P. 23(b)(3) ..........................................................................................7

Fed. R. Civ. P. 23(c)(5) ..........................................................................................9

Fla. Stat. § 500.12(1)(e) ..........................................................................................10

Fla. Stat. § 672.313(1)(b) ........................................................................................12

Florida Drug and Cosmetics Act, Fla. Stat. §§ 499.01-499.81..............................................10

Florida's Food Safety Act ("FSA"), Fla. Stat. §§ 500.01-80 ...................................................9

**Other Authorities**

3 Moore, Federal Practice (2d ed. 1948) .................................................................23

Federbush, David, *Damages Under FDUTPA*, 78 Fla. B.J. 20, (May 2004) ............................17

Plaintiff, Elizabeth Bohlke, individually, and on behalf of all others similarly situated, by and through her undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files her Response in Opposition to Defendant's Motion to Strike Class-Action Allegations and to Dismiss the First Amended Complaint, and states as follows:

## I.     INTRODUCTION

This case is not unique. Many actions have been brought *and maintained* against food manufacturers for the same factually untrue and misleading statements on their food labels that Defendant SHEARER'S FOODS, LLC f/k/a Shearer's Foods, Inc. ("Defendant") has made, and is continuing to make on its Products at issue in this case. Each of the arguments raised by Defendant have been consistently rejected by courts around the country, including this Court. However, Defendant, in its Motion to Strike Class-Action Allegations and to Dismiss the First Amended Complaint ("Motion to Dismiss" or "MTD") believes that it is special, and believes it should not be held accountable for its misbranded food.

Not only does Defendant inaccurately contend that a national consumer class action cannot be maintained, but it also asserts that no action against any food manufacturer—or producer of any consumer product for that matter—can ever be maintained on a national basis. This is not the law. Moreover, Defendant also incorrectly maintains that it is immune from liability under Florida law.

Defendant's exhaustive legal briefing missing the mark. Plaintiff did not rely on USDA guidance when making her purchasing decision. She relied on the label. The ultimate jury question is whether or not Defendant's "all natural" and/or "no artificial ingredients" statements ("Statements") on the Products' labels is likely to mislead a reasonable consumer. This factual dispute is well beyond resolution at the pleading stage.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

"No Artificial Ingredients."  "All Natural."  These two promises were prominently and uniformly displayed on the front packaging of each of Defendant's Products.  FAC ¶¶ 3, 7, 26.  In making her purchasing decision, Plaintiff perceived, read, and relied on these promises.  FAC ¶ 77.  However, the Products do contain artificial ingredients and are not <u>all</u> natural.  FAC ¶ 116. Plaintiff has properly alleged that each of the Products contain unnatural, synthetic, and/or artificial ingredients—some made from genetically modified and/or genetically engineered ingredients. FAC ¶¶ 1, 4, 8, 10, 25, 29, 35, 60, 78, 80, 113, 123, 127, 131, 135, 138, 144, 153.

The Products that Defendant falsely represented, which Plaintiff purchased, include the following three (3) flavor varieties of Defendant's Riceworks Gourmet Brown Rice Crisps: (i) Sweet Chili Flavor; (ii) Sea Salt Flavor; and (iii) Salsa Fresca Flavor.  FAC ¶ 2.  Defendant also includes in this same Product line, two (2) additional varieties of deceptively advertised food: Parmesan & Sundried Tomato Flavor and Tangy Barbeque Flavor.  (Collectively, these five (5) varieties of food products are referred to herein throughout as the "Products").  FAC ¶ 3.  All of the Products have the exact same Statements prominently displayed on the Products' packaging in the same location.[1]

The Sweet Chili Flavor contains: Masa Corn Flour; Canola Oil; Maltodextrin (from corn); Yeast Extract; and Citric Acid.  FAC ¶ 2(i)(a). The Sea Salt Flavor contains: Masa Corn Flour, Canola Oil, and Caramel Color.  FAC ¶ 2(ii)(a).  The Salsa Fresca Flavor contains: Masa Corn Flour, Canola Oil, Maltodextrin, Citric Acid, Yeast Extract, and Caramel Color.  FAC ¶ 2(iii)(a). The Parmesan & Sundried Tomato Flavor contains: Ground White Corn Masa, Canola Oil, Maltodextrin, Yeast Extract, and Citric Acid.  FAC ¶ 3.  The Tangy Barbeque Flavor Contains: Masa Corn Oil, Canola Oil, and Maltodextrin.  *Id.*

All of the above ingredients are unnatural, synthetic, and/or artificial.  *See* FAC ¶¶ 31-39 (explaining how and why each chemical or ingredient is unnatural, synthetic, and/or artificial).  A

---

1.     The issue of whether or not Plaintiff can serve as a class representative for all five flavor varieties or only the three flavors she purchased, is inappropriate for resolution at this stage of the proceeding. Nonetheless, Plaintiff has properly alleged that the Products are substantial similar. "[B]ecause the plaintiffs have Article III standing, at this stage, they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase. Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products — and whether plaintiffs will therefore adequately represent the interests of the class — is a question the Court will consider on a Rule 23 certification motion." *In re: Frito-Lay North America, Inc. All Natural Litigation*, 2013 U.S. Dist. LEXIS 123824, *34. (E.D. NY Aug. 29, 2013); *See also Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000, 1002 (N.D. Cal. Aug. 25, 2012) ("The 'critical inquiry [in these cases] seems to be whether there is sufficient similarity between the products purchased and not purchased.'"); *See also Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724, 2013 WL 5487236, *14 (N.D. Cal. Oct. 2, 2013) (The "substantially similar approach therefore accommodates the commonsense conclusion that where, as here, a plaintiff claims that [they were] misled by the improper use of the term 'All Natural' on a [product], the injury [they] suffer as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term 'All Natural' on [a different flavor of the same product]").

reasonable consumer expects and understands that the term "all natural" on a product label to mean the ordinary meaning of the term. *Id* ¶ 55. The term "natural" is defined by the Merriam-Webster dictionary as "existing or produced by nature: not artificial." *Id* ¶ 56

Defendant's Statements are false, misleading, and likely to deceive reasonable consumers like Plaintiff and the Class. FAC ¶¶ 8, 43, 71, 72, 85, 158. Defendant knew and intended for reasonable consumers, like Plaintiff and the Class to be deceived into purchasing the Products based on the (untrue) representations that the Products are made with "No Artificial Ingredients" and are "All Natural." FAC ¶¶ 61, 70. In fact, Plaintiff and the Class paid the premium price for the Products, because they purportedly contained "No Artificial Ingredients" and were "All Natural." *See* FAC ¶¶ 5, 28, 70, 71, 82, 87, 132. Therefore, Plaintiff and the Class have been economically harmed. FAC ¶¶ 69, 71-73, 94, 112, 158.

Accordingly, Plaintiff brought this putative class action against Defendant seeking, among other things, damages and restitution (in the alternative) on behalf of herself and the putative Class, declaratory relief, and injunctive relief in the form of an Order compelling Defendant to cease from falsely representing the quality of its Products to the public. FAC ¶¶ 9, 10.

Plaintiff filed her initial Complaint [DE 1] against Defendant on May 30, 2014. Defendant filed a motion to dismiss the initial complaint [DE 8] on July 29, 2014. Plaintiff filed the operative First Amended Complaint FAC [DE 15] ("First Amended Complaint" or "FAC") on August 12, 2014, and Defendant filed the subject Motion to Dismiss [DE 25] and Request for Judicial Notice in support thereof [DE 26] on September 18, 2014. Defendant has moved to dismiss all claims against it. Defendant's Motion to Dismiss, although plentifully cited, is ultimately unavailing and should be denied in its entirety.

## III.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations of material fact are taken as true." *Romano v.*

*Motorola, Inc.*, 2007 US Dist. LEXIS 86472, *2 (S.D. Fla. 2007) (citing *McReynolds v. Alabama Dept. of Youth Services,* 204 Fed. Appx. 819, 821 (11th Cir. 2006)).

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Thus, "[a] motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief.'" *Id.* (quoting *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998), cert. den., 525 U.S. 1139 (1999)). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Del Monte Fresh Produce Co.* v. *Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1283 (S.D. Fla. 2001).

Applying these standards, it is clear that Defendant's Motion to Dismiss should be denied in its entirety.

## IV.   LEGAL ARGUMENT

### A.  Plaintiff has Sufficiently Pleaded for a Nationwide Class Action

Defendant's primary argument is that this case cannot be maintained because the law of 51 jurisdictions is purportedly so different that a nationwide consumer class action would be impossible. *See* MTD pp. 4-12. In other words, according to Defendant, all nationwide consumer class actions fail as a matter of law under the *Federal Rules of Civil Procedure* and, therefore, litigants in the separate states must prosecute misrepresentation claims solely on a state by state basis, notwithstanding the fact that the misrepresentations alleged are identical in <u>all</u> 51 jurisdictions. This is an untenable standard that should not be adopted.

First, it should be noted that Plaintiff has pleaded for Florida statewide classes, and additionally and/or alternatively, nationwide classes. FAC ¶ 90. Plaintiff has reserved the right to amend, narrow, expand, or otherwise modify the class definition upon the conclusion of discovery. *Id*. ¶ 91. The scope of the class(es), and whether this action may be maintained nationwide is an issue to be resolved at the class certification stage, not the pleading stage. If Plaintiff ultimately seeks certification of a nationwide class, depending on what discovery reveals, Defendant is free to reassert its arguments as to why the class definition should be narrowed to only a Florida class. However, it is yet to be determined in what states the Products were sold, and whether the Statements at issue were uniformly presented on the Products nationwide.

Second, although not yet ripe for argument, Federal Court's frequently certify *contested* nationwide classes. *See Ebin v. Kangadis Food, Inc*, 297 F.R.D. 561, 565 (S.D.N.Y. Feb. 24, 2014) (stating, although "defendant contends that a hodgepodge of standards varying among these states would preclude a common answer to the question of whether the pomace oil in Capatriti tins was 100% Pure Olive Oil. . . .," "despite the variations in state standards, the injuries being litigated all derive from the alleged misrepresentation of what is pomace as 100% Pure Olive Oil, which would arguably violate all the varying state requirements."

Although an issue to be resolved at the class certification stage, other state's consumer protection laws are advanced by Florida providing those state's consumers protections under FDUTPA. The burden will be on Defendant to show compelling reason why other states consumer law's should apply, including a rigorous analysis showing that the foreign jurisdictions have a greater interest than Florida, and that a *true conflict* exists with the respect to the facts of this case. *See Enzo Forcellati, et al. v. Hyland's, Inc., et al.*, Case No.: CV 12-1983-GHK (MRWx), at * 1-3 (C.D. Cal. April 9, 2014) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012). Conclusory reliance on other cases does discharge Defendant's burden. *Id*. If the Products' labeling and advertising is found to be unfair, false, deceptive, and/or misleading it violates all states' consumer protection laws, and is not merchantable regardless of the State of purchase.

Additionally, "there are no geographical or residential restrictions contained in the express language" of FDUTPA. *Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) *Id*. at 1262. FDUTPA "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation," and this Court is not "precluded from taking corrective measures under FDUTPA even where those persons affected by the conduct reside outside of the state." *Id*; *See also Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*, No. 10-23869-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 61710, *18-19 (S.D. Fla. May 2, 2012); *2P Commercial Agency S.R.O. v. Familant*, Case No. 2:11-cv-652-FtM-29SPC, 2012 U.S. Dist. LEXIS 179628, *10-11 (M.D. Fla. Dec. 19, 2012).

It is not "arbitrary and unfair" to provide class action relief under Florida law when Florida has "sufficient contacts" with the alleged conduct; "Florida has a great interest in protecting people dealing with corporations doing business within Florida." *Renaissance Cruises, Inc.* v. *Glassman, et. al.*, 738 So. 2d 436, 438 (Fla. 4th DCA 1999).  Moreover, "the place of injury is less significant

in the case of fraudulent misrepresentations." *Cohen v. Implant Innovations, Inc.* 259 F.R.D. 617, 635 (S.D. Fla. 2008). "Sufficient contacts" is a factual issue to be resolved a later stage of this proceeding.

Although each state may also have an interest in protecting its respective citizens from unfair methods of competition, the policies behind each state's deceptive and unfair trade practices laws are advanced by providing its citizens protections under FDUTPA. *See Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987) ([The certifying State's] more favorable laws may properly apply to nonresidential plaintiffs when their home states have no identifiable interest in denying such persons full recovery."). The text of Rule 23, *Federal Rules of Civil Procedure*, does not limit class certification to only statewide classes. In order for a class to be certified under the *Federal Rules of Civil Procedure*, the plaintiff must meet all four prerequisites under Rule 23(a) and at least one of the requirements under Rule 23(b). *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004) *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 533 U.S. 639 (2008).

Plaintiff properly pleaded each of these prerequisites. Specifically, Plaintiff alleged that the putative Class, based on the popularity of the Products and their annual sales, joinder would be "impractical, if not impossible." FAC ¶ 93. Regarding whether common questions of law or fact were present in this case, Plaintiff set forth seventeen (17) examples, most of which are not based in any particular state law. FAC ¶ 94 ("Whether the Products contain artificial ingredients") FAC ¶ 94(b); ("Whether the Products are natural"). FAC ¶ 94(c); ("Whether the ingredients contained in the Products are artificial ingredients"). FAC ¶ 94(d), among many others. Plaintiff also alleged that "[t]he claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each." FAC ¶ 95. Finally, Plaintiff alleged that she would "fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass." FAC ¶ 96. Thus, Rule 23(a), *Federal Rules of Civil Procedure*, has been satisfied.

## 1. Rule 23(b)

Plaintiff has also satisfied the pleading requirements set forth in Rule 23(b)(2) and (b)(3), *Federal Rules of Civil Procedure*. *See* FAC ¶ 90.

6

Rule 23(b)(2), *Federal Rules of Civil Procedure*, states in relevant part that class actions are permitted under the *Rules* if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . ." FED. R. CIV. P. 23(b)(2). Here, there is no question that Plaintiff has alleged that Defendant acted *generally* in regards to its actions towards the Class. Defendant's misleading Statements were *uniformly* communicated to all members of the Class when, in fact the Products contain unnatural, synthetic, and/or artificial ingredients. *See* FAC ¶¶ 7, 26, 92.

Defendant—in a footnote—argues that Plaintiff cannot maintain a class action under Rule 23(b)(2), because her claims are not "cohesive" enough.  MTD p. 6, n.2 (citing *In re Prempro*, 230, F.R.D. 555, 569 (D. Ark. 2005) and *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)). Thereafter, Defendant, recognizing that "a Rule 23(b)(2) class does not have predominance or superiority requirements," nevertheless, attempts to improperly conflate the requirements of Rule 23(b)(3) with Rule 23(b)(2), by stating baldly, and without supporting authority, that "[i]n short, the choice-of-law issue pervades both putative class devices Bohlke seeks to use." *Id.* Defendant is mistaken.

Even assuming that cohesiveness were a requirement for Rule 23(b)(2) class actions, *see Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 11—12 (D. Mass. 2010) (finding that grafting a cohesiveness requirement onto Rule 23(b)(2) is neither supported by the text of the Rule, nor has either the First Circuit or the Supreme Court ever extended the "predominance requirement into (b)(2) classes" and, therefore, rejecting arguments to graft such a requirement); *see also Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir.1998) ("Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)"), Plaintiff has met such a burden. *See D. G.* ex rel. *Stricklin v. Devaughn*, 594 F.3d 1188, 1200 (10th Cir. 2010) (finding cohesiveness "because Named Plaintiffs assert that excessive caseloads are harming or putting at risk of harm *all* children in the class, the imposition of caseload limits would apply to the entire class") (emphasis in original).

All members of the Class were subjected to the same, uniform misstatement on the Products' packaging. An injunction against such false statements on the Products would stop Defendant from similarly harming consumers in the future, and would provide the benefit of the assurance of non-misleading Statements with regard to the food qualities and characteristics.

Rule 23(b)(3), requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). The former Fifth Circuit devised a test for demonstrating predominance. *Alabama v. Blue Bird Body, Co.*, 573 F.2d 309, 319-29 (5th Cir. 1978),[2] which the Eleventh Circuit has adopted. *See Klay*, 382 F.3d at 1255; *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009). Under the test in *Blue Bird Body*, "if common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class should not have a substantial effect on the substance or quantity of evidence offered.'" *Klay*, 382 F.3d at 1255 (quoting *Blue Bird Body*, 573 F.2d at 322). Thus, "the addition of more plaintiffs to a class [that necessitates] the presentation of significant amounts of new evidence... strongly suggests that individual issues (made relevant only through the inclusion of these new class members are important." *Id.* However, if "the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate." *Id.*

Here, at a minimum, Plaintiff has alleged that the Products are not as they were represented to be, *i.e.*, they *are* made with artificial ingredients and they are *not* "All Natural." FAC ¶¶ 1, 4, 8, 10, 25, 29, 35, 60, 78, 80, 113, 123, 127, 131, 135, 138, 144, 153. Whether the Products contain artificial ingredients and/or are not "All Natural" is a factual question to be determined through discovery. Defendant does not want to proceed with discovery, *see* MTD p. 4, notwithstanding the fact that common proof will resolve all Class member's claims. Defendant goes to great length to prevent Plaintiff from conducting discovery, arguing that differences in state law prevent nationwide discovery and certification as a matter of law. *See* MTD at pp. 6-12. Although a choice of law analysis is not ripe at this time, even as to Florida law, Defendant misstates a common, fundamental tenet, thereby calling into question the breadth of Defendant's research. Specifically, in section I.C., Defendant incorrectly states that Florida law requires privity of contract food cases. *See* MTD p. 10. As discussed in more detail in section IV.C., *infra*, Florida law does not require direct privity of contract where, like here, the case involves *food*. *Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) (foodstuffs are a "well-recognized exception to the privity

---

2.      In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) adopted as binding all Fifth Circuit precedent handed down prior to October 1, 1981.

requirement"). Accordingly, Plaintiff respectfully requests that matters concerning predominance, at least with regard to choice-of-law, be stayed until the certification stage so that full briefing can commence on those issues.

Nevertheless, to assuage Defendant's concerns, distinctions in the legal requirements of the several jurisdictions can be addressed and resolved by the creation of subclasses. *See* FED. R. CIV. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule"); *see also Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100, 117 (E.D. Va. 1980) ("The Court thus finds that plaintiffs have satisfied Rule 23(b)(3) requirements of predominance and superiority. The Court further finds that the horrors of unmanageability conjured by Allied in its opposition to class certification may vanish in the light of everyday judicial reality. The Court has at its disposal several devices with which to streamline the procedural morass presented by six subclasses, bifurcated trials, and thousands of claimants. In addition, the Court finds that several questions concerning both liability and damages may be dealt with on a classwide basis within each subclass"); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968) ("the Court under F.R.Civ.P. 23 has the duty, and ample powers, both in the conduct of the trial and relief granted to treat common things in common and to distinguish the distinguishable").

For the reasons discussed above, Plaintiff has demonstrated that her nationwide allegations should not be stricken.

B.   Plaintiff's First Amended Complaint Is Properly Pled

**1.   Florida's Food Safety Act Does Not Govern This Case**

Defendant makes two related and unavailing arguments concerning Florida's Food Safety Act, FLA. STAT. §§ 500.01-80 ("FSA"). First, Defendant incorrectly states that Plaintiff is suing Defendant under the FSA. Second, Defendant argues that the FSA precludes Plaintiff's FDUTPA count. Neither contention is accurate.

*a.   Defendant Misapprehends the Nature of Plaintiff's Claims*

Count I of the FAC is for violation of FDUTPA, FLA. STAT. §§ 501.201, *et seq.  See* FAC ¶¶ 104—120. However, Defendant, seizing on paragraphs 49-51 of the FAC, argues—in a footnote—that Plaintiff "is seeking to hold Shearer's liable under [the FSA.]" MTD p. 13, n.6. A simple reading of the FAC shows this is not legally or factually accurate. Defendant, thereafter, cites to *T.W.M. v. Am. Med. Sys.*, 886 F. Supp. 842, 844-45 (N.D. Fla. 1995) for the uncontested

proposition that there is "no private right of action under [the] FSA."  MTD p. 14.  Defendant is indeed correct that the FSA does not provide for a private right of action, which is why Plaintiff is not suing under the FSA.

In Count I, Plaintiff explicitly alleges that "[t]his cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act. . . ." FAC ¶ 105.  Paragraphs 49 through 51 of the FAC merely involve a description of the types of labeling that is widely considered to be deceptive, both by Florida and the national standards. Defendant is liable to Plaintiff because of Defendant's FDUTPA violations.

Additionally, it is worth noting that *T.W.M.* is inapposite to this case.  In *T.W.M.*, the plaintiff brought causes of action under *both* FDUTPA and the Florida Drug and Cosmetics Act, FLA. STAT. §§ 499.01-499.81, related to an allegedly defective penile implant. *Id.* at 843. The Court dismissed the plaintiff's FDUTPA count, because the plaintiff's FDUTPA count sought recovery for personal injury.  *Id.* at 844 ("In short, plaintiff seeks damages in this Court for personal injuries. Since the Act explicitly states that it does not apply to '[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction' [§ 501.212(3) *Fla. Stat.* (1993)], the defendant's motion to dismiss Count VI is GRANTED, and it is DISMISSED").  Here, Plaintiff is not seeking damages for personal injuries.

Defendant's attempt to frame Plaintiff's FAC as seeking relief under the FSA is belied by the plain meaning of FAC's text. *T.W.M.* does little more than stand for the unremarkable propositions that plaintiffs:  (i) cannot sue under Florida's Drug and Cosmetic Act; and (ii) cannot recover under FDUTPA for personal injuries sustained as a result of allegedly deceptive trade practices.

### b.  The FSA Does Not Preempt Plaintiff's FDUTPA Count

Alternatively, Defendant argues that the FSA preempts Plaintiff's claims.  MTD pp. 13-16.  But just like the FDCA, the FSA does not apply to this case.  *See Krzykwa v. Campbell Soup Co.*, 946 F. Supp.2d 1370, 1373 (S.D. Fla. 2013) (claims involving deceptive "100% Natural" food label not preempted by FDCA).  Moreover, none of Defendant's cited authorities state otherwise.

Indeed, the FSA grants the Florida Department of Agriculture and Consumer Services with the exclusive authority to *regulate* and *permit* "all food outlets, retail food stores, food establishments, convenience stores, and minor food outlets in accordance with this section." FLA. STAT. § 500.12(1)(e). Plaintiff does not seek to *regulate* or *permit* any conduct.  Rather, Plaintiff

seeks to hold Defendant accountable for deceptive and unfair trade practices that were specifically designed to deceive, and did in fact deceive, Plaintiff and members of the Class into purchasing its Products under misleading circumstances.   FAC ¶ 72.

Moreover, Defendant—again, in a footnote—cites to two cases involving courts' treatment of FSA preemption over food labeling cases. Defendant argues that the first case, *Reilly v. Amy's Kitchen*, No. 13-21525 2013 WL 9638985 (S.D. Fla. Dec. 9, 2013), should be ignored. MTD p. 16 n.9.  However, *Reilly* provides the most analysis regarding deceptive food claims, FDUTPA, and the FSA of any other court to date.

As the *Reilly* Court observed, "while the Complaint alleges that Defendant's practices related to the sale, promotion, and marketing of products containing ECJ constitute a *per se* violation of FDUTPA in violation of Fla. Stat. § 500.04(1) and (2) because the products are misbranded, FAC ¶¶ 32, 38, it also alleges that the practices Defendant employed were "unfair, deceptive, and misleading." *Id*. Thus, regardless of whether Plaintiff can establish a *per se* violation of FDUTPA, Plaintiff's FDUTPA claims would stand." *Reilly*, 2013 WL 9638985 at *3.

The second case, *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 564 (Fla. 2005), however, provides no analysis, much less a discussion of legislative intent, regarding the FSA.  Instead, the Florida Supreme Court, in dictum, merely recited the grounds upon which the trial court dismissed the plaintiff's complaint. The Court did not pass judgment, as Defendant concedes, on the propriety of those grounds.

Additionally, Defendant's legislative intent argument, which requires the acceptance of its Request for Judicial Notice [DE26], is equally unavailing because it does nothing more than repeat, over and over, that only the Florida Department of Agriculture and Consumer Affairs can *regulate* and *permit* companies like Defendant. But once again, Plaintiff is not seeking to regulate or permit Defendant in any manner whatsoever. Plaintiff, rather, is seeking redress on behalf of herself and others similarly situated under FDUTPA.

As Plaintiff alleged in paragraphs 49 through 51, the FSA largely mirrors the FDCA, and the FDCA has repeatedly been found to not preempt Plaintiff's claims. *See, e.g.*, *Krzykwa*, 946 F. Supp.2d at 1373; *Larson v. Trader Joe's Co.*, 917 F. Supp.2d 1019, 1024 (N.D. Cal. 2013); *Reilly*, 2013 at *3; *Garcia v. Kashi Co.*, 12-21678, --- F. Supp.2d --- 2014 WL392163, *9 (Sept. 5, 2014) ("In sum, the Court rejects Defendants' argument that Plaintiffs cannot challenge the 'all natural'

characterization of its products.  At this motion to dismiss stage, the Court accepts Plaintiffs' well-pleaded allegations that the "all natural" labeling on Defendants' products is misleading").

    C.  <u>Plaintiff's Claims Constitute Warranties Under Florida Common Law and the MMWA</u>

      Defendant cites  to the minority decisions (all outside of Florida) of *Chin v. General Mills, Inc.*, No. 12-2150, 2013 U.S. Dist. LEXIS 77345 (D. Minn. May 31, 2013); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013); and *Thomas v. Costco Wholesale Corp.*, No. 5:12-cv-02908 EJD, 2013 U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013) regarding Magnuson-Moss Warranty Act ("MMWA") claims. MTD p. 13.  However, numerous cases *in Florida*, including within this judicial district, have held that Plaintiff's warranty claims are valid.

      First, the MMWA creates a private right of action under federal law for state law warranty claims. *See* 15 U.S.C. § 2310 (d)(1); *See also Monticello v. Winnebago Indus. Inc.*, 369 F.Supp.2d 1350, 1356 (N.D. Ga. 2005). "[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir.1986). "The Act supplements, rather than supplants state law." *Monticello*, 369 F. Supp. 2d at 1356.  Thus, by virtue of stating a cause of action for breach of express warranty under state law, discussed below, Plaintiff states a claim for violation of the MMWA.

      "To state a claim for breach of express warranty under Florida law, 'a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty.'"  *Egbebike v. Wal-Mart Stores East, LP*, 2014 WL 3053184, at *5 (M.D. Fla. July 7, 2014) (quoting *Jovine v. Abbott Labs., Inc*., 795 F. Supp. 2d 1331, 1340-41 (S.D. Fla. 2011)).  Under Fla. Stat. § 672.313(1)(b), moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

      Plaintiff's allegations reflect that Defendant sold the Products with a description of being "All Natural" and made with "No Artificial Ingredients" while the Products were not "All Natural" and were made with artificial ingredients.  *See* FAC ¶¶ 1, 4, 8, 10, 25, 29, 35, 60, 78, 80, 113, 123, 127, 131, 135, 138, 144, 153.  Additionally, Plaintiff alleges that she relied on that representation when purchasing the Products and, consequently, suffered economic damages.  *See* FAC ¶¶ 5, 28,

70, 71, 82, 87, 132.  Finally, Plaintiff alleges that she provided Defendant notice of the breach of express warranty.  FAC ¶ 140.  The allegations, therefore, establish each of the requisite elements for a claim of breach of express warranty.

Additionally, the creation of an express warranty is derived from the seller's representations in advertisements, catalogues, circulars, and the like, all of which, under the circumstances, can give rise to express warranties for the breach of which the seller will be liable in damages to those who purchased the seller's products in reliance on the aforesaid representations. *Manheim v. Ford Motor Co.*, 201 So. 2d 440 (Fla. 1967). The Products' statements prominently positioned on the front packaging of each of the Products that the Products were made with "No Artificial Ingredients" and were "All Natural" were the express representations constituting an express warranty.  *See Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp.2d 1336 (S.D. Fla. 2009).

As mentioned above in Section IV.A above, Defendant misstates the law in Florida with regard to privity of contract.  MTD p. 18. Defendant correctly states the general rule that manufacturers ordinarily are not liable for breach of express warranty to ultimate consumers, who purchased the manufacturer's products through a third-party, such as a retailer, because the ultimate consumer was never in privity with the manufacturer. *See id.* (Neglecting to cite to a single case involving food products). However, there is an exception to this rule where the warranty is addressed to and intended for the ultimate consumer in cases involving sales of goods intended for human consumption, that are in sealed packages prepared by the manufacturer and having labels with representations to consumers inscribed thereon.  *See Spencer v. Carl's Markets, Inc.*, 45 So. 2d 671 (Fla. 1950); *Florida Coca-Cola Bottling Co. v. Jordan*, 62 So. 2d 910 (Fla. 1953). *See also Dye v. Bodacious Food Company*, No.: 9:14-cv-80627-WPD, Order Denying Motion to Dismiss (S.D. Fla. Sept. 9, 2014) [DE 14] (finding that the plaintiff's allegations, nearly identical to the allegations in this action, stated a cause of action for violation of the MMWA, breach of express warranty, FDUTPA, negligent misrepresentation, and unjust enrichment).

Defendant oversimplifies the law governing the privity requirement. In *Smith v. Wm. Wrigley Jr. Co.*, Judge Cohn observed, "[t]he privity requirement in Florida warranty claims is a moving target which depends on factors including whether the warranty is express or implied and the type of injury alleged. The Supreme Court of Florida acknowledged that 'warranty law in

13

Florida has become filled with inconsistencies and misapplications in the judiciary's attempt to provide justice to the injured consumer.'" 663 F. Supp. 2d 1336, 1342 (S.D. Fla. 2009).

The Supreme Court of Florida has not expressly stated that privity is required in order to bring a claim for breach of express warranty and, "a degree of uncertainty persists," on this issue. *Id.* at 1342. In upholding the plaintiff's breach of warranty claim, Judge Cohn took into account that the warranty was located on the packaging of the product and that the Plaintiff purchased the product from a "cashier at a local convenience store," who was surely not "familiar with the scientific properties of [the product]." *Id.* at 1343. Similar to *Smith*, the Plaintiff here purchased the Product from a store, and the warranty is connected with the label and performance of Defendant's Product itself. Therefore, like the Plaintiff in *Smith*, the Plaintiff here does not need to be in privity with Defendant because the Product at issue is "foodstuff." *See id.*; *see also Hoskins v. Jackson Grain Co.,* 63 So. 2d 514 (Fla. 1953); *see also Carter v. Hector Supply Co.,* 128 So. 2d 390, 392 (Fla. 1961) (foodstuffs are a "well-recognized exception to the privity requirement").

Moreover, even if privity were required, the requirement is met where, as here, a manufacturer makes direct representations to the purchaser. *Smith,* 663 F. Supp. 2d at 1342; *see also Point Blank Solutions, Inc. v. Toyobo Am., Inc.,* 2010 U.S. Dist. LEXIS 117477 (S.D. Fla. Nov. 3, 2010) (Court found privity existed between the plaintiff and the defendant where the plaintiff purchased the product from third party but the defendant had made numerous representations about the product to the plaintiff); *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of America, Inc.,* 444 So. 2d 1068, 1072 (Fla. 3d DCA 1984) (holding the privity requirement is satisfied where manufacturer made direct representations to the ultimate purchaser about equipment that was purchased from a third-party distributor); *see also New Nautical Coatings, Inc. v. Scoggin,* 731 So. 2d 145, 147 (Fla. 4th DCA 1999) (affirming a breach of warranty claim against a manufacturer when a third-party shop provided the services to the plaintiff).

Contrary to Defendant's assertion, the "packaging's disclosure of ingredients does not" preclude Plaintiff's claims. *Dye,* No.: 9:14-cv-80627-WPD, * 7. "A consumer might be misled by the statement "all natural," regardless of additional disclosures on the back of a Product's packaging. *Id.* "It is plausible that a consumer might rely on the "all natural" representation without scrutinizing the ingredients or, alternatively, that a consumer might incorrectly believe that [the offending ingredients] are "all natural" ingredients. *Id.* "Here, the allegations indicate that the "all

natural" claim is actually false." *Id*.

Accordingly, Defendant did not shield itself from liability by identifying artificial and unnatural ingredients on the rear side of the Products' packaging by name. *See Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *see also Feiner v. Innovation Ventures, LLC*, Case No.: 12-cv-62495 (S.D. Fla. May 29, 2013) (denying defendant's motion to dismiss where defendant argued that its 5 Hour Energy product's slogan that "no crash later" was clarified on the rear label of the product to actually just mean "no sugar crash" because the front label representation effectively deceived the reasonable consumer for purposes of a motion to dismiss). However, in contrast to *Feiner*, Defendant here did not even identify the Substances as artificial and/or synthetic *anywhere* on the Products' packaging. Accordingly, this Court should reject Defendant's ineffective implausibility argument.

Consistent with the above cases, the Plaintiff alleged that throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product expressly claiming it had "No Artificial Ingredients" and was "All Natural." FAC ¶¶ 6, 20, 25. Such representations were made on the Product's packaging, labeling, and/or other in-store advertisements or statements even though the Products are made with artificial ingredients and are not "All Natural." FAC ¶¶ 1, 4, 8, 10, 25, 29, 35, 60, 78, 80, 113, 123, 127, 131, 135, 138, 144, 153. Plaintiff purchased the Product in reliance on these representations. FAC ¶¶ 5, 28, 70, 71, 82, 87, 132. The uniformly packaged and labeled Products were purchased by Plaintiff, an ultimate user, at a third-party retailer, Publix. FAC ¶ 76. Thus, the Plaintiff has alleged a valid cause of action for breach of express warranty against the Defendant and, by doing so, alleged a valid claim under the MMWA. *See Monticello v. Winnebago Indus. Inc.*, 369 F.Supp.2d at 1356.

### 1. Plaintiff Has Alleged Damages

Defendant next argues that Plaintiff cannot, under any circumstances, plausibly allege damages in this action. MTD p. 20. Defendant declares that Plaintiff's alternative damages theories, *i.e.*, that Plaintiff and members of the Class paid a price premium for the Products because of the Products' deceptive labeling, or, that Plaintiff and members of the Class paid for Products that were rendered valueless as a result of the misbranded deceptive label, is so far outside the realm of plausibility that discovery should not be permitted to even ascertain whether Plaintiff's

15

claims are, in fact, true. *Id.* To support these untenable positions, Defendant once again cites to inapposite law. *Id.*

FDUTPA provides for civil private causes of action for declaratory, relief, injunctive relief, and for damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "The standard for determining the actual damages recoverable under FDUTPA is well defined in the case law: "the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [. . .] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of actual damages." *Id.* (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *see also Carol D. Smith v. WM. Wrigley Jr. Company*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009). In addition, "Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim." *Id.* (citing *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004). "[A]ctual out of pocket losses" are not a prerequisite to a deceptive trade practices action in Florida. *Id.* at 990.

Plaintiff primarily contends the Product is rendered valueless due to its failure to disclose its true nature, its unlawful misbranding, and because it is sold pursuant to an unfair trade practice. FAC ¶¶ 83-86. Because there is no market value for an unlawful product, the damages in this case are equal to the aggregate full purchase price for the Product paid by Plaintiffs and members of the Class during the Class Period. *Id.*; *See Siever v. BWGaskets, Inc.*, 669 F.Supp. 2d 1286, 1294 (M.D. Fla. Oct. 25, 2009); *See also Garcia*, 2014 WL 439216, *19-20 (holding that the plaintiffs state a claim for FDUTPA and negligent misrepresentation, including expressly finding the plaintiffs properly alleged damages for both causes of action regarding an allegedly deceptive "All Natural" food product); *See also Foster v. Chattem, Inc.* No.: 6:14-cv-00346-RBD-GJK, * 3-4, Order on Motion to Dismiss (M.D. Fla. July 24, 2014) [DE 45] (stating "Defendant similarly contends that the Complaint does not plausibly state a claim for damages. This contention is unavailing. Plaintiff alleges that the product was alternatively: (1) rendered valueless due to misbranding; or (2) worth less than what she paid due a premium charge for the misbranded features.).

Defendant's failure to disclose a characteristic of the Product reduced the Product's overall value, which is an unfair trade practice. *See Rosen v. J.M. Auto Inc., et al.*, Case No.: 07-61234-

16

CIV-DIMITROULEAS, 270 F.R.D 675, 688, (S.D. Fla. 2009) (stating "[t]he alleged . . . unfair trade practice is the failure to disclose a defect; Defendants deny that there is any defect and do not argue that they ever made any disclosure of one.").  An omission may be considered an "unfair" practice if it fails to disclose. *See* Federbush, 78 FLA. B.J. 20 (citing *International Harvester*, 104 F.T.C 949 (1984), available at http://www.floridabar.org/DIVCOM/JN/ JNJournal01.nsf/c0d731e03de9828d852574580042ae7a/f93c1e0860313d2285256e7f005e7360! OpenDocument&Highlight=0,fdutpa*; *see also Rosen*, 270 F.R.D at 688.

Accordingly, if a jury determines that Defendant's practice was "unfair," then recovery of the full purchase price may also be proper. *See* Federbush, David, *Damages Under FDUTPA*, 78 FLA. B.J. 20, (May 2004) (*citing Smith v. 2001 South Dixie Highway, Inc.*, 2004 Fla. App. LEXIS 2709 (Fla. 4th DCA March 3, 2004)).  Because Defendant's conduct was "unfair," damages are warranted in the form of the aggregate full retail price paid by Plaintiffs and the Class for the Product—even though alternatively—the Products may not have been rendered completely valueless to all consumers. *See* Federbush, 78 FLA. B.J. 20 (*citing Smith*, 2004 Fla. App. LEXIS 2709); *See also Spinelli v. Capital One Bank*, 265 F.R.D. 598, 604 (M.D. Fla. 2010) (stating that the issue of whether the product was rendered worthless predominates over individual inquires).

Regardless, even assuming the Court ultimately determines that full reimbursement of the purchase is not the appropriate measures of damages in this case, Plaintiff and the putative Class are nonetheless entitled to recovery under a traditional price premium theory.  *See Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp.2d at 1340-41) (rejecting the exact lack of damages argument Defendant makes here).[3]

Furthermore, irrespective of whether Plaintiff and putative Class are entitled to actual damages, Plaintiff is also seeking declaratory and injunctive relief so as to prevent further unfair and deceptive conduct.  Pursuant to FDUTPA, FLA. STAT. § 501.211, "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated."  The injunctive power authorized by the controlling consumer protection statute includes both prohibitory relief (ordering Defendant to stop engaging in deceptive and unfair advertising) and mandatory injunctive relief (requiring

---

3.     It is also worth noting that although *Smith* was not referenced in section II.B.3 of Defendant's Motion to Dismiss, it is cited and analyzed elsewhere by Defendant.  *See* MTD. p. 19.

Defendant to engage in a corrective advertising campaign).  *See, e.g., Global Tel*Link Corp. v. Scott*, 652 F.Supp.2d 1240 (Fla. Dist. Ct. 2009); *Corn Const., Inc. v. Broward County Bldg. and Const. Trades Council*, 268 So.2d 438 (Fla. App. 1972).

A reasonable consumer's interpretation of Defendant's claim and the appropriate measure of damages is a factual inquiry inappropriate for resolution at the pleading stage.  Here, Plaintiff alleged that she purchased the Product under an erroneous belief that the Products actually were made with "No Artificial Ingredients" and actually were "All Natural."  FAC ¶¶ 5, 28, 70, 71, 82, 87, 132.  They are not.  FAC ¶¶ 1, 4, 8, 10, 25, 29, 35, 60, 78, 80, 113, 123, 127, 131, 135, 138, 144, 153.  Plaintiff has alleged that he would not have purchased the Product had she known that they were made with artificial ingredients and were not "All Natural.".  FAC ¶¶ 72, 83, 84, 131. Plaintiff and the Class where charged (and paid) a price premium for the Products even though the Products were not as advertised.  FAC ¶¶ 5, 28, 70, 71, 82, 87, 132. The "price premium" is equal to the amount charged for, and paid by, Plaintiff and members of the class. *Id*. ¶ 87. The true market value is no more than the retail price charged for other comparable brands of chip products that do not claim to be "All Natural." *Id.*

Plaintiff was injured as a result of the Defendant's deceptive practices that resulted in the price premium.  FAC ¶¶ 69, 71-73, 94, 112, 158. Plaintiff has not only requested damages be awarded, but that the Defendant be enjoined from making similar misrepresentations to the public. FAC ¶¶ 3, 120.  Plaintiff has thus alleged that she was, in fact, injured by the Defendant's conduct.. Plaintiff is entitled to conduct discovery to prove her allegations.

### D.  Reasonable Consumers, Like Plaintiff and Members of the Class Were Deceived by Defendant's Deceptive Product Labels

Defendant next argues that a reasonable consumer could not be misled by the Product's packaging as a matter of law.  MTD pp. 23, 24.  Defendant is again mistaken.

As discussed above, Plaintiff has alleged that Defendant's practice is "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.,* 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000); *see also Davis v. Powertel, Inc.,* 777 So. 2d 971 (Fla. 1st DCA 2000).  Whether a practice was likely to deceive a consumer acting reasonably in the circumstances under FDUTPA, is a jury question. *Izadi v. Machado (Gus) Ford, Inc.,* 550 So. 2d 1135 (Fla. 3d DCA 1989). Indeed, reasonableness is normally a jury question under Florida law.  *See Roos v. Morrison,* 913 So. 2d

59 (Fla. 1st DCA 2005); *Berges v. Infinity Ins. Co.,* 896 So. 2d 665 (Fla. 2004); *Farinas v. Florida Farm Bureau General Ins. Co.,* 850 So. 2d 555 (Fla. 4th DCA 2003); *Wilson v. State,* 765 So. 2d 950 (Fla. 5th DCA 2000). *See also Dye v. Bodacious Food Company*, No.: 9:14-cv-80627-WPD, Order Denying Motion to Dismiss (S.D. Fla. Sept. 9, 2014) [DE 14] (finding that the plaintiff's allegations, nearly identical to the allegations in this action, stated a cause of action for violation of the MMWA, breach of express warranty, FDUTPA, negligent misrepresentation, and unjust enrichment).

      As discussed above, Defendant cannot hide behind the ingredient panel. The ingredient panel does not disclose which ingredients are natural from those that are not. To the contrary, Defendant's "all natural" representation conceals the truth, and leads the reasonable consumer to believe that all of the ingredients are natural, when they are not. Here, the question of whether the Statements are "likely to mislead" presents a factual issue incapable of resolution at the pleading stage.[4]

### E.  Plaintiff Has Properly Alleged Justifiable Reliance

      Next, Defendant argues that Plaintiff's negligent misrepresentation count must be dismissed because Plaintiff did not allege she justifiably relied on Defendant's label.  MTD. pp. 24, 25.  Defendant argues that Plaintiff and members of the Class should have known that the "All Natural" and made with "No Artificial Ingredients" label was untrue because Defendant placed the unnatural, synthetic and/or artificial ingredients on the back of the Products' label.  MTD. p. 25 (citing to an exhibit in support of Defendant's Request).

---

4.    *Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) (reversing dismissal of breach of warranty and unfair competition claims challenging "all natural" toddler snacks containing corn syrup and sugar); *Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 339 (3d Cir. 2009) (reversing dismissal of "all natural" iced tea containing high fructose corn syrup); *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (denying motion to dismiss similar claims of "all natural" beverages containing high fructose corn syrup); *In re Conagra Foods Inc.,* 908 F.Supp.2d 1090 (C.D. Cal. 2012) (denying in part motion to dismiss similar claims of "100% all natural" cooking oil containing genetically modified organisms); *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028 (N.D. Cal. 2009) (denying motion to dismiss similar claims regarding "all natural" pasta sauce containing high fructose corn syrup); *Astiana v. Ben & Jerry's Homemade, Inc.,* C 10-4387 PJH, 2011 WL 2111796 at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss similar claims regarding "all natural" ice cream containing alkalized cocoa); *Henderson v. Gruma Corp.,* CV 10-04173 AHM AJWX, 2011 WL 1362188 at *11 (C.D. Cal. Apr. 11, 2011) (denying motion to dismiss similar claims regarding "all natural" bean dip containing transfats).

First, this district recently held that a plaintiff did justifiably rely on Defendant's "All Natural" claims. *Garcia*, 2014 WL 4392163, * 21. Indeed, "justifiable reliance" is typically not addressed at the motion to dismiss and/or motion for summary judgment stage, as this is a question of fact for the trier of fact. *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 311 (Fla. 1st DCA 2011), *reh'g denied* (May 10, 2011) (recognizing that "[i]t is for the jury to determine whether reliance was justified under the totality of circumstances."); *see Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 173 (Fla. 4th DCA 1994) (upholding that "a determination of reliance is typically left to the trier of fact."); *see also Lopes v. Allstate Indem. Co.*, 873 So. 2d 344, 347 (Fla. 3d DCA 2004) (holding that the question of reliance and "whether a [defendant] has made a material misrepresentation is a question for the jury to determine."); *Koehler v. Merrill Lynch & Co., Inc.*, 706 So. 2d 1370, 1373 (Fla. 2d DCA 1998)(revering denial of motion to dismiss where issues of reliance on misrepresentations, which involve fact questions, should have been submitted to the trier of fact for determination); *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co., Inc.*, 20 Fla. L. Weekly Fed. D 705 (S.D. Fla. 2007) (recognizing that "examination of the parties [sic] conduct is a fact-based inquiry, something that cannot be resolved in a motion to dismiss."). Moreover, as discussed above, Defendant did not disclose on its ingredient panel that the ingredients were not natural and were artificial, as its MTD suggests.

F.   Plaintiff Has Stated a Claim for Unjust Enrichment

Defendant contends that Plaintiff cannot recover for unjust enrichment, Plaintiff's alternative theory, because "[h]ere, in exchange for payment, Bohlke received a bag of Riceworks and so her belated claim of unjust enrichment cannot stand." MTD p. 26 (citing *Prohias v. Pfizer*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007). But Plaintiff did not receive what she *paid for*; she received something of lesser value, if it had value at all, *i.e.*, Products that were not "All Natural" and that *were* made with artificial ingredients. *See e.g.*, *Reilly*, 2013 WL 9638985 (unjust enrichment claim validly stated for deceptive product label); *Krzykwa*, 946 F. Supp.2d at 1373 (unjust enrichment claim entitled to proceed based on deceptive "100% Natural" label). *Prohias* is, again, an inapposite case, because the plaintiffs were found have received what they bargained for, specifically, lower cholesterol and reduced risk of heart disease. *Prohias*, 490 F. Supp.2d at 1236. Here, Plaintiff and members of the Class did not receive what they bargained for: Products that are made with "No Artificial Ingredients" and that are "All Natural." The Products are made with

artificial ingredients and are not "All Natural." *See* FAC ¶¶ 1, 4, 8, 10, 25, 29, 35, 60, 78, 80, 113, 123, 127, 131, 135, 138, 144, 153.   Thus, *Prohias* is inapposite.

Whether Plaintiff in fact received the benefit of what she bargained for is, again, a question of fact. *See Cohen v. Kravit Real Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. 4th DCA 2003) (reversing summary judgment where question of fact existed as to whether benefit was conferred to second joint venturer).

### G.  The Primary Jurisdiction Doctrine Does Not Apply to This Case

Defendant's effort to stay this litigation pursuant to the primary jurisdiction doctrine should, like all its other arguments discussed above, be rejected in its entirety. *See* MTF p. 26, 27.  Once again, numerous courts, including this Circuit, have rejected Defendant's arguments based in cases substantially similar to this one.

The primary jurisdiction doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharmaceutical Research and Mfrs. of America v. Walsh*, 538 U.S. 644, 674 (2003) (Breyer, J., concurring); *Syntek Semiconductor Co. v. Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) ("[I]t is a prudential doctrine under which courts *may*, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts.").[5]  The primary jurisdiction doctrine does not apply here, especially considering that "Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws and regulations."  FAC ¶ 11.

The Eleventh Circuit has explained that:

> The primary jurisdiction doctrine is ... concerned with protecting theadministrative process from judicial interference." *Boyes v. Shell Oil Prods. Co.*,199 F.3d 1260, 1265 (11th Cir. 2000). Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special

---

5.      "[P]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.  It is not . . . a doctrine that requires that all claims within an agency's purview to be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit."  *Id.*

competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v.Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). "'[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.'" *Boyes*, 199 F.3d at 1265 (quoting *County of Suffolk v. Long Island Lighting Co*., 907 F.2d 1295, 1310 (2nd Cir.1990)); *see also United States v.Western Pac. R.R. Co*., 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

*Sierra Club v. Van Antwerp*, 362 F. A'ppx 100, 104 (11th Cir. 2010).

The primary jurisdiction doctrine does not apply in this case. As explained in *Lockwood v. Conagra Foods, Inc*., "various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources.  Moreover, this is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading."  597 F.Supp.2d 1028, 1035 (N.D. Cal. 2009); *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO-, 2013 WL 5514563, *4 (N.D. Cal. Oct. 4, 2013) (noting that there is "no reason why determining whether a label is misleading is outside the ability of the Court.  Such questions are frequently determined by the courts"); *Jones v. ConAgra Foods, Inc.*, 2012 US Dist. LEXIS 178352, *6 (N.D. Cal., Dec. 17, 2012) ("[C]ourts need not refer ["natural"] claims to the FDA pursuant to the primary jurisdiction doctrine"); *see also Wright v. General Mills, Inc*., 2009 U.S. Dist. LEXIS 90576, *9 (S.D. Cal., Sept. 30, 2009) ("[b]ased on the FDA's consistent determination that the term 'natural' does not need specific definition, state law claims based upon the use of the term 'natural' [do] not [present] an issue of first impression, do not require technical expertise within the special competence of the FDA, and [do] not [raise] a particularly complicated issue outside the ability of the Court to consider and decide"); *Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-cv-COHN/SELZER (S.D. Fla. Dec. 9, 2013) (rejecting primary jurisdiction argument where issue was not a matter of first impression); *Krzykwa v. Campbell Soup Co.*, 946 F. Supp.2d 1370 (S.D. Fla. 2013) (where the Court rejected defendant's primary jurisdiction argument over a "100% Natural" claim); *Dye v. Bodacious Food Co.*, CASE NO. 14-80627-CIV-DIMITROULEAS (S.D. Fla. Sept. 9, 2014) (rejecting primary jurisdiction argument over "All Natural" claim deceptively and prominently located on the front packaging of the defendant's food products).

22

Accordingly, Plaintiff's claims fall well within the authority of this Court. Plaintiff's state law claims based on the misleading use of the term "All Natural" do not require the expertise of the FDA or any other federal agency, and as such, are not precluded by the primary jurisdiction doctrine. The issue of whether the Statements are misleading to the reasonable consumer is a matter well-within the province of this Court.

Nevertheless, even if the "All Natural" label were somehow appropriate to stay this case pursuant to the primary jurisdiction doctrine, which is not, Defendant's deceptive "No Artificial Ingredients" label is clearly not appropriate for stay. Indeed, Defendant does not even address that deceptive statement in its Motion to Dismiss. MTD. pp. 26, 27. Therefore, Defendant's Motion to Dismiss should be denied.

### H.  Any Dismissal of Any of Plaintiff's Claims Should Be Without Prejudice

In the event the Court finds that any of Plaintiff's claims are insufficiently pled, dismissal should be without prejudice and with leave to amend. The standard for granting leave to amend is generous.  Pursuant to Fed. R. Civ. P. 15(a), leave to amend should "'be freely given when justice so requires;' this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962) (citing 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988).

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Based on the generous nature of granting leave to amend, it is appropriate in the current matter to allow amendment if any cause of action is dismissed.  As discussed above, the standard is simply that the court must be able to "conceive of facts" that would make the claim a viable one. In the instant action, it is conceivable that if a dismissal is granted with respect to Plaintiff's claims, that amendment would be not only conceivable, but very probable.

### V.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Honorable Court enter an Order denying Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, and for all other relief this Honorable Court deems just, appropriate, or proper.

**Respectfully Submitted By,**

Dated: October 13 2014

*/s/   Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**THE EGGNATZ LAW FIRM, P.A.**
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel:    (954) 889-3359
Fax:    (954) 889-5913
JEggnatz@EggnatzLaw.com

*Attorneys for Plaintiff*
*and the Proposed Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **13 day of October, 2014**, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF.  I also certify under penalty of perjury under the laws of the United States of America that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF.

/s/   Joshua H. Eggnatz

Joshua H. Eggnatz, Esq.

## SERVICE LIST

Justin B. Mazzara (0036217)
jmazzara@hahnlaw.com
**HAHN LOESER &PARKS LLP**
2400 First Street, Suite 300 Fort Myers, FL 33901
Phone: 239.337.6700 Fax: 239.337.6701


Kelly A. Kosek (Ohio Bar No. 0075623) *
kkosek@hahnlaw.com
Royce R. Remington (Ohio Bar No. 0040408
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: 216.621.0150
Fax: 216.241.2824

*Attorneys for Defendant*