UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-CV-80727-ROSENBERG/BRANNON

ELIZABETH BOHLKE, as an individual and
on behalf of all others similarly situated,

      Plaintiffs,

v.

SHEARER'S FOODS, LLC, formerly known
as SHEARER'S FOODS, INC., an Ohio
limited liability company,

      Defendant.
_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's, Shearer's Foods, LLC, Motion to

Strike Plaintiff's Nationwide Class-Action Allegations and to Dismiss First Amended Complaint

(the "Motion") [DE 25], filed herein on September 18, 2014. The Court has carefully considered

the Motion [DE 25], the Response [DE 40] and the Reply [DE 45].[1] A hearing was held on the

Motion on December 4, 2014. The Court is otherwise fully advised in the premises. For the

reasons discussed below, the Motion is granted in part and denied in part.

I.      BACKGROUND[2]

The parties to this action are Plaintiff Elizabeth Bohlke ("Plaintiff"), as an individual and

on behalf of all others similarly situated, and Defendant Shearer's Foods, LLC ("Shearer's" or

"Defendant"). Defendant makes Riceworks Gourmet Brown Rice Crisps, which are available in

_____

[1] Because the Motion, Response, and Reply include a Table of Contents and a Table of Authorities, the page numbers of all three are significantly different than the page numbers generated by CM/ECF. Citations are to the page numbers in the original documents, as opposed to the CM/ECF page numbers.
[2] The background facts are taken exclusively from the allegations in the Amended Complaint [DE 15].

several different flavor varieties (collectively referred to herein as the "Products"). DE 15 ¶ 1. Plaintiff purchased three varieties of Riceworks: the Sweet Chili Flavor, the Sea Salt Flavor, and the Salsa Fresca Flavor.[3] *Id.* ¶ 2. The Products' packaging states that the Products are "All Natural" and contain "No Artificial Ingredients." *Id.* ¶ 1. However, the Products contain unnatural, synthetic, and/or artificial ingredients such as Masa Corn Flour, Canola Oil, Maltodextrin, and Caramel Color. *Id.* ¶ 2.

Accordingly, Plaintiff alleges that Defendant's "All Natural" and "No Artificial Ingredients" claims are untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the proposed Classes. *Id.*¶¶ 25–26. Plaintiff further alleges that Defendant unlawfully markets, advertises, sells and distributes the Products—with the false "All Natural" and "No Artificial Ingredients" representations—to Florida and United States purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores. *Id.* ¶ 27. Finally, Plaintiff alleges that she and other Class members suffered various economic injuries in connection with purchasing the Products, which were not as represented. *Id.* ¶¶ 72–75.

Plaintiff has asserted the following causes of action against Defendant: (1) Violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) Negligent Misrepresentation; (3) Breach of Express Warranty; (4) Violation of the Magnuson-Moss Warranty Act ("MMWA"); and (5) Unjust Enrichment. Through the instant Motion [DE 25], Defendant requests that the Court strike Plaintiff's nationwide class-action allegations and dismiss all counts. The Court first addresses the Motion to Strike, then turns to the Motion to Dismiss.

---

[3] Other varieties that Plaintiff names in her Amended Complaint include the Parmesan & Sundried Tomato Flavor and the Tangy Barbeque Flavor.

## II.    MOTION TO STRIKE

Plaintiff's Amended Complaint includes class action allegations, and states Plaintiff's intent to certify statewide classes and additionally and/or alternatively, nationwide classes. *See* DE ¶ 90. Defendant argues that Plaintiff's nationwide class allegations should be stricken because there exist "insuperable obstacles" to the certification of nationwide classes complying with Federal Rule of Civil Procedure 23. *See* DE 25 at 4–5. Defendant's argument proceeds, in summary, as follows: (1) all of Plaintiff's claims are state law claims; (2) for each claim, in each state, the Court will have to conduct a choice-of-law analysis; (3) Florida applies either the "most significant relationship" test of Restatement (Second) Conflict of Laws § 145/148, or the *lex loci contractus* rule, to the various causes of action pled in the Amended Complaint; (4) given the transaction-based nature of the claims, the state of purchase will almost certainly be the state with the "most significant relationship" to each claim, and will always be the forum in which the parties executed their contract(s), as required under the *lex loci contractus* rule; (5) the Court will thus need to apply the laws of fifty-one different jurisdictions with respect to the proposed nationwide classes; and (6) the laws of these fifty-one jurisdictions are materially different, making certification of nationwide classes improper. *See* DE 25 at 4–12.

Plaintiff argues in her response, *inter alia*, that striking the Amended Complaint is premature, especially since she reserves the right in her Amended Complaint to amend, narrow, expand, or otherwise modify the class definition upon the conclusion of discovery.[4] *See* DE 15 ¶ 91; DE 40 at 4. In its reply, Defendant counters that no amount of discovery will remedy the underlying problem: that the laws of the various jurisdictions are simply too different to certify nationwide classes compliant with Rule 23. *See* DE 45 at 1. The Court does not find Defendant's

---

[4] Plaintiff raises a host of other arguments, but it is this argument which the Court finds most relevant at this point in the litigation.

argument on this point particularly persuasive; Plaintiff could ultimately move to certify a very limited "nationwide" class, perhaps one consisting of a limited number of states, such that the laws of the jurisdictions involved are sufficiently compatible to support certification under Rule 23. In short, the issues Defendant raises may never materialize.

More importantly, however, the Court believes that the relief requested by Defendant is not merited under Federal Rule of Civil Procedure 12(f).[5] Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although some courts have considered Rule 23's requirements when evaluating motions to strike class allegations,[6] the Court declines to do so here. Instead, the Court applies the standard stated in Rule 12(f), following other courts in the Southern District of Florida.[7] As the Court finds nothing "redundant, immaterial, impertinent, or scandalous" in Plaintiff's class action allegations, the Motion to Strike Plaintiff's Nationwide Class-Action Allegations is denied.[8] Defendant may re-raise the arguments contained within its Motion to Strike if and when Plaintiff moves to certify nationwide classes.

### III.    MOTION TO DISMISS

Defendant separately argues that Plaintiff's Amended Complaint should be dismissed in its entirety. The Court first considers the arguments Defendant has made with regards to the primary jurisdiction doctrine, then considers Defendant's arguments pertaining to Plaintiff's

---

[5] Defendant confirmed at the hearing of December 4, 2014 that the Motion to Strike was brought under Rule 12(f).
[6] *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011) (affirming the district court's grant of the defendant's motion to strike class allegations, where the district court, without discussing the Rule 12(f) standard, "reasoned that, under Ohio's choice-of-law rules, it would have to analyze each class member's claim under the law of his or her home State," and such a task "'would make this case unmanageable as a class action' and would dwarf any common issues of fact implicated by the lawsuit").
[7] *See, e.g.*, *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 698–700 (S.D. Fla. 2014) (discussing at length the merits of striking class allegations prior to a motion to certify the class and concluding that the movant should be held to the stricter standard of Rule 12(f) because, *inter alia*, striking the class allegations at the pleading stages would carry more finality than the typical order on a motion to certify the class, as those orders are not final and may later be amended).
[8] The Court does not opine on whether the alleged class could be properly certified on a Rule 23 motion for class certification.

4

standing and the labeling of the Products at issue,[9] and finally considers Defendant's arguments that Plaintiff has failed to state a claim as to each count. For the reasons stated below, Defendant's Motion to Dismiss is granted in part and denied in part.

    **A.    Primary Jurisdiction Doctrine**

Defendant asserts that, pursuant to the primary jurisdiction doctrine, the Court should defer to the Food and Drug Administration ("FDA") on the core issues underlying this case. More specifically, Defendant maintains that analyzing and determining the meaning and implications of the terms "natural," as used on food labels, are tasks within the purview of the FDA's functioning and expertise.

The Court, however, finds that neither a dismissal nor a stay is warranted under the primary jurisdiction doctrine. The primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). The doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Jones v ConAgra Foods, Inc.,* 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012) (internal quotations omitted).

Under the doctrine, the following four factors are relevant to a court's determination of whether to defer to an agency's primary jurisdiction: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly

---

[9] Defendant raises two arguments in the section of its Motion entitled "Relevant Background." The placement of these arguments makes it unclear whether Defendant intended the Court to consider these arguments in the context of the Motion to Strike or the Motion to Dismiss. As the Court believes they are most properly considered in the context of the Motion to Dismiss, that is how the Court addresses them.

within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222 (2d Cir. 1995). Courts have declined to dismiss false advertising claims premised on food companies' "natural" claims because the FDA simply does not regulate those claims. *See, e.g.*, *Jones*, 912 F. Supp. 2d at 898–99 (declining to apply primary jurisdiction doctrine to "100% natural" claims); *Janney v. Gen. Mills*, 944 F. Supp. 2d 806, 814–15 (N.D. Cal. 2013) ("Nevertheless, in repeatedly declining to promulgate regulations governing the use of 'natural' as it applies to food products, the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue, or in establishing some 'uniformity in administration' with regard to the use of 'natural' in food labels.").

In light of this precedent, the Court finds no basis to stay or dismiss this case in deference to the FDA. The FDA is free to promulgate regulations governing the term "natural," but has not done so. Judges have experience interpreting terms in conjunction with parties' disputes, and the prospect of interpreting the term "all natural" does not fall outside of that conventional experience. Thus, the Court declines to stay or dismiss the case under the primary jurisdiction doctrine.

### B.    Plaintiff's Standing and Products Purchased

Defendant makes two arguments that apply equally to each of Plaintiff's claims. These arguments pertain to Plaintiff's standing and whether or not certain varieties of the Products include the labels which she alleges they do.

i.    *Plaintiff's Standing*

First, Defendant argues that Plaintiff lacks standing to pursue any claims involving varieties of Riceworks that she herself did not purchase—specifically, the "Tangy Barbeque" and "Parmesan & Sundried Tomato" flavors. *See* DE 25 at 3 n.1; DE 15 ¶¶ 2–3. Plaintiff counters that (1) "[t]he issue of whether or not Plaintiff can serve as a class representative for all five flavor varieties or only the three flavors she purchased is inappropriate for resolution at this stage of the proceeding," and (2) she "has properly alleged that the Products are substantial [*sic*] similar." *See* DE 40 at 2 n.1.

On this point, the Court concurs with Defendant. Plaintiff's first argument, that such issues are more properly resolved upon a motion for class certification, directly contradicts Eleventh Circuit precedent. *See Prado-Steiman* ex rel. *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("Thus, it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

Plaintiff's second argument refers to a position held by courts in other circuits that class representatives may challenge non-purchased products that are "sufficiently similar" to the purchased products. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013). However, Southern District of Florida courts have declined to apply the "sufficiently similar" test, citing *Prado-Steiman*, and this Court agrees with those well-reasoned opinions. *See Garcia v. Kashi Co.*, No. 12-21678-CIV, 2014 WL 4392163, at *25–27 (S.D. Fla. Sept. 5, 2014); *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4–5 (S.D. Fla. Sept. 13, 2013).

7

Accordingly, the Court concludes that in the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase. Therefore, in this case, the claims that Plaintiff has standing to bring are limited to the (1) Sweet Chili Flavor, (2) Sea Salt Flavor, and (3) Salsa Fresca Flavor of Riceworks. *See* DE 15 ¶ 2. In this respect, Defendant's Motion to Dismiss is granted and her claims pertaining to the Tangy Barbeque and Parmesan & Sundried Tomato Flavors are dismissed without prejudice.

### ii. Product Labels

Defendant also argues that although Plaintiff claims the labels on the Products' packages are identical, "certain varieties of Riceworks do not contain the labels at issue here." *See* DE 25 at 3 n.2. They ask the Court to consider images of Riceworks packaging (for the Sweet Chili, Sea Salt and Black Sesame, Parmesan & Sundried Tomato, Salsa Fresca, and Sea Salt Flavors) attached to their Motion, arguing that the Court may consider the images because they are referred to in the Complaint and are central to Plaintiff's claims. *See id.* (citing *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1253 (11th Cir. 2013)); *see also* DE 25 Ex. 3. Although Defendant does not clarify the way(s) in which it would like the Court to consider the images, presumably it wishes the Court to dismiss Plaintiff's claims as to the Product varieties that lack the labels at issue. Plaintiff does not address this argument specifically in her Response, but she does reiterate the position set forth in her Amended Complaint that the "No Artificial Ingredients" and "All Natural" labels were "prominently and uniformly displayed on the front packaging of each of Defendant's Products." DE 40 at 1.

As the parties are apparently in disagreement as to the labels on the Products' packaging, the Court considers this issue one more properly addressed at the motion for summary judgment stage. Defendant's Motion to Dismiss is denied on this point.

### B.      Failure to State a Claim

Defendant separately alleges that each of Plaintiff's Counts fails to state a claim upon which relief can be granted. The Court first discusses the legal standard, then turns to Defendant's arguments on each Count.

#### i.      Legal Standard

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

> ii.     Discussion

Defendant asserts several arguments for dismissal. The Court will consider each argument in turn.[10]

> 1.     Count I: FDUTPA

Defendant argues that Plaintiff's FDUTPA claim fails for three reasons: (1) it is barred by the Florida Food Safety Act ("the FFSA"); (2) Plaintiff has failed to plead a plausible theory of actual damages; and (3) a reasonable consumer would not be deceived by the labels at issue. Each argument is discussed in turn. For the reasons stated below, the Court finds each argument unavailing and allows Plaintiff's FDUTPA claim to proceed.

> a.     FFSA

Defendant contends that Plaintiff's FDUTPA claim is, in reality, a claim of mislabeling, and as such is governed exclusively by the FFSA and the Florida Department of Agriculture and Consumer Services ("the Department"). Defendant's argument proceeds as follows: (1) mislabeling is governed by the FFSA, Florida Statute sections 500.01–80, and is within the exclusive jurisdiction of the Department; (2) additionally, there is no private right of action under the FFSA; and (3) by attempting to premise her FDUTPA claim on purported acts of mislabeling, Plaintiff is thus contravening the intent of the Florida legislature, obstructing the legislature's express goal of "uniform" legislation in the arena of food misbranding, and creating a private right of action where none was intended to exist. *See* DE 25 at 27.

---

[10] Federal courts sitting in diversity apply the substantive law of the state in which the case arose. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010). Accordingly, the Court will apply Florida law.

As Defendant notes, however, at least one Southern District of Florida court "has declined to find that the FSA precludes a FDUTPA claim." *See* DE 25 at 30 (citing *Reilly v. Amy's Kitchen*, No. 13–21525–CIV, 2013 WL 9638985 (S.D. Fla. Dec. 9, 2013)). The Court is aware that the claim at issue is slightly different from the one before the court in *Reilly*. Nonetheless, the Court agrees with the reasoning of the court in *Reilly*.

FDUTPA provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a FDUTPA claim, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (citation omitted). "FDUTPA can be violated in two ways: (1) a per se violation premised on the violation of another law proscribing unfair or deceptive practice and (2) adopting an unfair or deceptive practice." *Hap v. Toll Jupiter Ltd. P'ship*, No. 07–81027–CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 27, 2009). (citing Fla. Stat. §§ 501.204(1), 501.203(3)). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). A per se violation of FDUTPA results from the violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices." *Blair v. Wachovia Mortg. Corp.*, No. 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar.14, 2012) (citation and internal quotation marks omitted).

Plaintiff alleges that Defendant's use of "All Natural" and "No Artificial Ingredients" labels, when Defendant's Products contain allegedly artificial and non-natural ingredients, violates portions of the FFSA, namely Florida Statute section 500.04. *See* DE 15 ¶ 111. The reference to the violation of the statutory provision is presumably Plaintiff's attempt to establish a *per* se FDUTPA violation. Defendant's argument that Plaintiff could not bring a private cause of action under Florida Statute section 500.04 is well-taken. *See* Fla. Stat. § 500.032(1). Nonetheless, this Court agrees with the court in *Reilly*, in that "it is not apparent that a plaintiff must be able to maintain a private cause of action under Fla. Stat. § 500.04 to establish a *per se* violation under FDUTPA." *Reilly*, 2013 WL 9638985, at *3 n.1.[11]

Moreover, Plaintiff also alleges, separate and apart from the statutory provision, that the practices Defendant employed were "unfair and deceptive." *See id.* ¶¶ 112–13. Thus, regardless of whether Plaintiff can establish a *per se* violation of FDUTPA, Plaintiff's FDUTPA claims would stand.

b.    Actual Damages

Plaintiff pleads two theories of actual damages. First, Plaintiff alleges that she is entitled to a full refund of the purchase price of the Products she purchased because the misbranding rendered those Products "valueless." *See* DE 15 ¶ 85. Plaintiff also puts forth a separate but related theory, alluded to in her Amended Complaint but more fully fleshed out in her response, that "if a jury determines that Defendant's practice was 'unfair,' then recovery of the full

---

[11] The Court notes that one other case addresses this issue obliquely. In *Boca Burger, Inc. v. Forum*, 912 So. 2d 561 (Fla. 2005), *as revised on denial of reh'g* (Sept. 29, 2005), the Florida Supreme Court discussed, in dictum, the grounds upon which a Florida trial court had granted a motion to dismiss in the case. The trial court had found that the plaintiff's FDUTPA claim was "preempted by Florida's Food Safety Act . . . which grants the Department of Agriculture and Consumer Services exclusive jurisdiction to protect the public from injury flowing from intrastate commerce in food." *Id.* at 564–65. The decision was reversed on other grounds, and accordingly, the Florida Supreme Court did not discuss the propriety of the trial court's decision on the FDUTPA claim. Because *Boca Burger* does not contain a substantive discussion of the claim, because the trial court decision which did address the issue was ultimately reversed, and because *Reilly* was decided after *Boca Burger*, the Court declines to dismiss Plaintiff's FDUTPA claim in reliance on that case.

purchase price may also be proper," even if the Products would not have been rendered completely valueless to all consumers, because "there is no market value for an unlawful product." *See* DE 15 ¶ 86; DE 40 at 17 (citing *Smith v. 2001 S. Dixie Highway, Inc.*, 2004 Fla. App. LEXIS 2709 (Fla. Dist. Ct. App. Mar. 3, 2004), *withdrawn*, 872 So. 2d 992; David J. Federbush, *Damages Under FDUTPA*, 78 Fla. B.J. 20 (2004)). Second, and in the alternative, Plaintiff alleges that she is entitled to the difference between the Products' price and the price of products that are not labeled "All Natural," because she would have simply purchased the cheaper, not-necessarily-natural products had she known the Products she did purchase were not actually "All Natural" (the "price premium" theory). DE 15 ¶ 87.

Defendant argues that neither theory is plausible, and Plaintiff's FDUTPA claim should be dismissed for failure to plead actual damages. First, Defendant argues that the Products cannot be considered "valueless," because "[a]t the very least, [Plaintiff] received a bag of food and consumed it." *See* DE 25 at 22–23 (citing a string of California federal district court cases); *see also* DE 45 at 8–9. Defendant also argues that Plaintiff's alternative valueless theory, that she is entitled to the full purchase price if Defendant's practice was "unfair," is similarly meritless; Defendant distinguishes the cases cited by Plaintiff and notes that *Smith*, upon which both Plaintiff and the Federbush article rely, was withdrawn and replaced with a contrary decision. *See* DE 45 at 8 & n.4. Second, Defendant argues that Plaintiff's price premium theory of damages is implausible because it "require[s] the Court to speculate that such a [price] premium was attributable solely to the alleged 'All Natural'/'No Artificial Ingredients' labeling," as opposed to some other factor, such as the fact that the Products are "gluten-free, contain no high-fructose corn syrup," and are, in some cases, "vegan-friendly." *See* DE 25 at 20–22.

For defining "actual damages" under FDUTPA, *Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. Dist. Ct. App. 1984), is the seminal case. *Rollins* adopted the measure of damages used by Texas courts in interpreting Texas's Deceptive Trade Practices Act, and stated the measure of damages as such:

> Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.

*Id.* at 585; *see also Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) ("Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim." (internal quotation marks and citation omitted)).

First, the Court quickly disposes of Defendant's argument as to Plaintiff's price premium theory. The Court finds Plaintiff has alleged a plausible theory of damages, in that she alleged that she paid a price premium for the Products due to the "All Natural" and "No Artificial Ingredients" labeling. That is all that is required to be pled under the Federal Rules of Civil Procedure. At this stage in the litigation, Plaintiff is only required to state a claim that is plausible on its face, and this she has done. *Cf. Stires v. Carnival Corp.*, No. 6:02-CV-542-ORL31JGG, 2003 WL 21356781, at *2 (M.D. Fla. Jan. 2, 2003) ("Although Stires did not specify the value of the cruise promised and the value of the cruise received, which is the proper measure of FDUPTA damages, she has complied with Federal Rules of Civil Procedure 8(a) and 9. Read in the light most favorable to Stires, it cannot be said that she has failed to plead her claim with particularity. Hence, dismissal is not warranted.").

The more difficult question is whether Plaintiff's alternative theory, that the Products were rendered valueless, should survive this Motion to Dismiss. Plaintiff appears to allege two

14

separate grounds for this theory, as noted above: that the Products were rendered valueless due solely to the misbranding, or, in the alternative, that they were rendered valueless because they were unlawful due to Defendant's unfair trade practices. *See* DE 40 at 17 ("Because Defendant's conduct was 'unfair,' damages are warranted in the form of the aggregate full retail price paid by Plaintiffs and the Class for the Product—even though alternatively—the Products may not have been rendered completely valueless to all consumers.").

The Court finds, ultimately, that Plaintiff has met her burden at this stage of the litigation. *Rollins* allows for an exception to the general rule when the product at issue has been rendered valueless as a result of the alleged defect. 454 So. 2d at 585. Plaintiff has alleged in her Amended Complaint that "the Products are misbranded and valueless." DE 15 ¶ 85. Whether the Products are valueless due solely to the misbranding, or because they were "sold pursuant to an unfair business practice, and there is no market value for an unlawful product," *see* DE 15 ¶ 86, Plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff's FDUTPA claim should not be dismissed for this reason.[12]

c.    Reasonable Consumer

Defendant also alleges that Plaintiff's FDUTPA claim fails because the Products' "All Natural" and "No Artificial Ingredients" labels would not have deceived a reasonable consumer: first, because Plaintiff has "failed to offer a plausible, objective definition" of the terms, and second, because "[a]n objectively reasonable consumer would read the entire label" and consider the "All Natural"/"No Artificial Ingredients" claims in the context of the ingredients list. *See* DE 25 at 23.

---

[12] The Court notes that its ruling on this point should not be taken as an opinion on whether or not Plaintiff is entitled to a refund of the full purchase price of the Products, or whether she is entitled to damages at all.

The Court disagrees with both arguments. As to Defendant's first argument, "[w]hether [specific] conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine." *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. Oct. 7, 2013). Plaintiff alleges facts that, if true, establish a deceptive or false claim as to the Products. Specifically, Plaintiff alleges that "the Products contain unnatural, synthetic, and/or artificial ingredients," namely Masa Corn Flour, Canola Oil, Maltodextrin, Yeast Extract, Citric Acid, and Caramel Color. *See* DE 15 ¶¶ 2, 8. The Court finds no basis to disregard those allegations, which identify the specific compounds that are purportedly "artificial" and/or not "natural." *See Dye v. Bodacious Food Co.*, No. 9:14-cv-80627-WPD, DE 14, at 8–9 (S.D. Fla. Sept. 9, 2014). Thus, Defendant's argument as to the meaning of "natural" and "artificial ingredients" does not warrant a dismissal of any claims.

The Court similarly is unpersuaded by Defendant's second argument. A consumer might be misled by the statements "All Natural" and "No Artificial Ingredients," regardless of additional disclosures on the back of a Product's packaging. It is plausible that a consumer might rely on these representations without scrutinizing the ingredients or, alternatively, that a consumer incorrectly might believe that sugar, canola oil, dextrose, corn starch, and citric acid are "natural" ingredients. *See id.* at 7–8. Thus, the Court finds that the inclusion of the ingredient list on the Products' packaging does not preclude Plaintiff's FDUTPA claim. Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint is denied.

2.    Count II: Negligent Misrepresentation

Defendant makes the same arguments with respect to actual damages for Plaintiff's negligent misrepresentation claim as it made for Plaintiff's FDUTPA claim. *See* DE 25 at 20–23. For the reasons discussed above, the Court concludes that Plaintiff plausibly has alleged damages

16

with respect to her negligent misrepresentation claim. Defendant separately argues that Plaintiff has failed to adequately allege justifiable reliance on the statements at issue. Defendant points to allegations in Plaintiff's Amended Complaint that she relied on Defendant's reputation and the distribution of Defendant's Products through reputable companies when deciding to purchase the Products, *see* DE 15 ¶ 130, and argues that such allegations are insufficient. Specifically, Defendant argues that Plaintiff has failed to adequately plead the justifiable reliance element of her negligent misrepresentation claim, because Defendant's reputation is unrelated to the alleged misrepresentations themselves, upon which reliance must be based. *See* DE 25 at 24–25. Defendant also reiterates its argument that the labels cannot be read in a vacuum, and the ingredient list should be considered in analyzing whether Plaintiff's reliance was justifiable. *See id.*

Under Florida law, to establish negligent misrepresentation, a plaintiff must prove, *inter alia*, that she suffered injury as a result of "acting in justifiable reliance on the misrepresentation." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1338 (S.D. Fla. 2011) (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1497 (11th Cir. 1993)). The issue of whether or not a plaintiff's reliance on the alleged misrepresentations was justifiable typically is left for the jury. *See, e.g.*, *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 311 (Fla. Dist. Ct. App. 2011) ("It is for the jury to determine whether reliance was justified under the totality of circumstances."); *Newbern v. Mansbach*, 777 So. 2d 1044, 1046 (Fla. Dist. Ct. App. 2001) ("[T]he question of a party's justifiable reliance is an issue of comparative negligence that should be resolved by a jury.").

Plaintiff adequately has pled her justifiable reliance on Defendant's statements. She alleges that "Plaintiff and other reasonable consumers, including the Class members, reasonably

relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products," and that such reliance "was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies." *See* DE 15 ¶¶ 129–30. No more is required at this stage of the litigation, and to the extent that Defendant argues her reliance was not justified—either because the ingredients were listed on the back of the package, or because Defendant's reputation is irrelevant to the calculus—those are questions of fact inappropriate for resolution upon a motion to dismiss. Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint is denied.

### 3.    Count III: Breach of Express Warranty

Defendant asserts that Plaintiff has not stated a claim for breach of express warranty. Defendant raises two arguments on this point: first, that Plaintiff's claim fails because the inclusion of the allegedly artificial ingredients on the ingredient list affects the scope of any warranty; and second, that Plaintiff's claim fails because privity did not exist between Plaintiff and Defendant.

"To state a claim for breach of express warranty under Florida law, 'a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty.'" *Egbebike v. Wal-Mart Stores East, LP*, 2014 WL 3053184, at *5 (M.D. Fla. July 7, 2014) (quoting *Jovine*, 795 F. Supp. 2d at 1340–41). Under Florida Statute section 672.313(1)(b), moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

Defendant first argues that because Defendant expressly informed consumers of the allegedly artificial ingredients by including them in the ingredient list, it cannot be in breach of

an express warranty. *See* DE 25 at 18 (citing *Chin v. General Mills, Inc.*, No. 12-2150, 2013 WL 2420455 (D. Minn. June 3, 2013)). In addition to citing *Chin*, Defendant also relies on Florida Statute section 672.317, which states, in relevant part,

> Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:
>
>> (1) Exact or technical specifications displace an inconsistent sample or model or general language of description.

Defendant cites excerpts of this language in support of its argument that "[a] warranty includes all representations made, including those on the ingredient list." DE 25 at 18.[13]

The Court declines to follow *Chin*, a District of Minnesota case. Instead, the Court conducts a straightforward analysis of Plaintiff's express warranty claim. Plaintiff's First Amended Complaint alleges that the statements "All Natural" and "No Artificial Ingredients," which were displayed on the front of the Products' packaging, were an express warranty which Defendant breached by including "unnatural, synthetic, and/or artificial ingredients" in the Products. *See* DE 15 ¶¶ 134–38. At this stage, the Court's inquiry is complete; "[t]he existence of an express warranty is a factual issue for the jury to decide." *Small v. Amgen, Inc.*, No. 2:12-CV-476-FTM-29, 2014 WL 897033 (M.D. Fla. Mar. 6, 2014) (citing *State Farm Ins. Co. v. Nu Prime Roll–A–Way of Miami*, 557 So. 2d 107, 109 (Fla. Dist. Ct. App. 1990)). This is in line with a number of cases—at least two of which are Southern District of Florida cases—in which courts, while not confronted with this specific argument, have allowed express warranty claims to proceed under Florida law on similar facts. *See, e.g.*, *Dye v. Bodacious Food Co.*, No. 9:14-cv-

---

[13] In response Plaintiff cites to several cases, none of which explicitly address this argument in the context of an express warranty claim. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) (addressing similar arguments made in the context of unfair competition laws); *Dye*, No. 9:14-cv-80627, DE 14, at 7–8 (addressing defendant's argument that no *misrepresentation* could occur due to the inclusion of the allegedly unnatural ingredients in the ingredient list); *Feiner v. Innovation Ventures LLC*, Case No. 0:12-cv-62495, DE 29, at *6 (S.D. Fla. May 29, 2013) (addressing this argument in the context of plaintiff's FDUTPA claim).

80627, DE 14, at *10–11 (S.D. Fla. Sept. 9, 2014); *Garcia v. Kashi Co.*, No. 12-21678-CIV, 2014 WL 4392163, at *21–22 (S.D. Fla. Sept. 5, 2014); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013).

Second, Defendant argues that Plaintiff's express warranty claim fails because privity does not exist between Plaintiff and Defendant. *See* DE 25 at 18. The Court recognizes that "[w]hether privity is required in a claim for breach of express warranty under Florida law is not clear cut." *Garcia*, 2014 WL 4392163, at *21 (citing *Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d at 1341–43). After reviewing the case law, the Court is persuaded by Judge Cohn's analysis in *Wrigley* and, for the same reasons, concludes that Plaintiff's claim for breach of express warranty survives despite the absence of privity. Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint is denied.

### 4.      Count IV: Magnuson-Moss Warranty Act Claim

Defendant submits that Plaintiff's MMWA claim fails because "[p]roduct descriptions are not warranties under the MMWA." More specifically, Defendant indicates that, under the relevant provision of the MMWA, a written warranty is not created unless there is an affirmation or promise that a product is "defect free" or will "meet a specified level of performance over a specified period of time." *See* DE 25 at 17.

The Court finds that the allegations are sufficient to state a claim under the MMWA. An MMWA claim depends on a state law claim for breach of warranty. *See, e.g., Burns v. Winnebago Industries, Inc.*, No. 8:11–cv–354–T–24–TBM, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012) (collecting cases). Because Plaintiff's claim for breach of express warranty may proceed, the MMWA claim, at this juncture, may proceed as well. *See Dye*, No. 9:14-cv-80627,

DE 14, at 11 (allowing a similar MMWA claim to proceed). Defendant's Motion to Dismiss Count IV of Plaintiff's Amended Complaint is denied.

5.      Count V: Unjust Enrichment

"To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 (11th Cir. 2011). However, "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. Dist. Ct. App. 2007).

Defendant argues that Plaintiff was given adequate consideration for the benefit conferred, and thus, her claim of unjust enrichment should fail. *See* DE 25 at 25–26. In support of this contention, Defendant cites *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007). In *Prohias*, the plaintiffs alleged that the defendant had engaged in a multifaceted advertising campaign to convince doctors and consumers that Lipitor, which is a cholesterol-lowering drug, also reduces heart disease, even though the scientific evidence to support such claims was lacking. *See id.* at 1231. The court dismissed the plaintiffs' unjust enrichment claim, because the plaintiffs "purchased a cholesterol reducing drug, and . . . obtained cholesterol reduction as a result. Therefore, in a general sense, they obtained the benefit of their bargain." *Id.* at 1236. Plaintiff contends that *Prohias* is inapposite, in that Plaintiff did not receive what she bargained for—an "All Natural" product, free of artificial ingredients.

21

The Court agrees with Plaintiff. Plaintiff has alleged, with great specificity, the ways in which Defendant's Products were not as represented, *see generally* DE 15 ¶ 71, and moreover alleges that "[h]ad Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Products," *see id.* ¶ 72. To the extent that *Prohias* applies, the Court finds it distinguishable in that Plaintiff, unlike the plaintiffs in *Prohias*, alleges that she did not receive what she bargained for. *See Marty v. Anheuser-Busch Companies, LLC*, No. 13-23656-CIV, 2014 WL 4388415, at *14 (S.D. Fla. Sept. 5, 2014) (distinguishing *Prohias* and allowing an unjust enrichment claim to proceed where the plaintiffs alleged that they paid a premium price for a beer they believed was brewed in Germany, and where they alleged they would not have purchased the beer had they known it was brewed domestically using domestic ingredients). Defendant's Motion to Dismiss Count V of Plaintiff's Amended Complaint is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [DE 25] is **GRANTED IN PART AND DENIED IN PART**. Accordingly, it is

**ORDERED AND ADJUDGED** as follows: (1) Plaintiff's claims are limited to the flavors of Riceworks that she herself purchased, and her claims as to the flavors she did not purchase (Tangy Barbeque and Parmesan & Sundried Tomato) are **DISMISSED WITHOUT PREJUDICE**, and (2) in all other respects, Defendant's Motion is hereby **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 20th day of January, 2015.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE